IN THE CIRCUIT COURT FOR THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

IBERIABANK, a Louisiana banking
Corporation, as successor in interest to Orion
Bank

CASE NO.: 10-CA-051179

        Plaintiff,

v.

COCONUT 41, LLC, a Florida limited liability
company, THE D'JAMOOS GROUP, LTD., a
Florida limited liability company, D'JAMOOS HOLDINGS,
INC., a Florida corporation, JOSEPH D'JAMOOS, an
individual and trustee of the Joseph E. D'Jamoos Second
Amended and Restated Revocable Trust Agreement U/A/D
May 20, 2003, AJAX PAVING INDUSTRIES, INC., a
Michigan corporation, WESTWIND CONTRACTING,
INC., a Florida corporation, and HOLE MONTES, INC.,

        Defendants.

_____/

## **DEFENDANT, WESTWIND CONTRACTING, INC.'S SECOND AMENDED COUNTERCLAIM AND CROSS-CLAIM**

WESTWIND CONTRACTING, INC, a Florida corporation ("WESTWIND"), sues

IBERIABANK, a Louisiana banking corporation, as successor in interest to Orion Bank;

COCONUT 41, LLC, a Florida limited liability company ("COCONUT 41"); AJAX PAVING,

INC., a Michigan corporation ("AJAX"); HOLE MONTES, INC., a Florida corporation

("HOLE MONTES"); HG COCONUT, LLC, a Florida limited liability company ("HG

COCONUT"); and FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of

FLORIDA COMMUNITY BANK, a Florida corporation ("FDIC")and alleges that it is entitled

to relief upon the following facts:

4/28/11

## JURISDICTION, VENUE AND PARTIES

1.    This is an action for damages exceeding $15,000.00, exclusive of interest, costs, and attorneys' fees.

2.    At all times material to this action, WESTWIND was Florida Corporation organized under the laws of the State of Florida, with its principal place of business in Broward County, Florida.

3.    At all times material to this action, IBERIABANK was a Louisiana banking corporation, is the successor in interest to Orion Bank, and as such is the owner of property in Lee County, Florida subject to this action.

4.    At all times material to this action, COCONUT 41 was a Florida limited liability company with its principal place of business in Lee County, Florida and owned property in Lee County subject to this action.

5.    At all times material to this action, AJAX was a Michigan corporation that engaged in substantial business transactions in Lee County, Florida and recorded a Claim of Lien against the property subject to this action in Lee County, Florida.

6.    At all times material to this action, HOLE MONTES was a Florida corporation with its principal place of business in Miami-Dade County, Florida and recorded a Claim of Lien against the property subject to this action in Lee County, Florida.

7.    At all times material to this action, HG COCONUT was a Florida limited liability company with its principal place of business in Lee County, Florida and owned property in Lee County, Florida subject to this action.

8. At all times material to this action, FLORIDA COMMUNITY BANK was a Florida corporation with its principal place of business in Lee County, Florida and owned property in Lee County, Florida subject to this action. HG COCONUT is brought into this action pursuant to 1.170 (h), Florida Rules of Civil Procedure.

9. FDIC was appointed receiver of FLORIDA COMMUNITY BANK on January 27, 2010 which that appointment was confirmed by the Court on January 29, 2010. As such, FDIC is the party responsible for the action against FLORIDA COMMUNITY BANK contained herein. FDIC is brought into this action pursuant to 1.170 (h), Florida Rules of Civil Procedure.

10. Venue is proper in Lee County as the agreements and transactions underlying this action were made and performed in Lee County, Florida; the properties at issue are located in Lee County, Florida; and the causes of action stated herein accrued in Lee County, Florida.

**FACTS**

11. On or about June 16, 2006, WESTWIND and COCONUT 41 entered into a written contract in connection with furnishing of labor, services, materials and improvements to a property as more properly described in Exhibit "A" attached hereto. A copy of the addendum to the contract (minus plans, specifications, change orders and other related documents as these are too voluminous to attach) is attached hereto as Exhibit "B" (ON-SITE CONTRACT). WESTWIND does not possess a signed copy of the AIA A107 form contract between the parties as referenced in the addendum.

12. On or about August 15, 2006, WESTWIND and COCONUT 41 entered into a written contract in connection with furnishing of labor, services, materials and

improvements to road work and off-site improvements to benefit properties as more properly described in Exhibits "E," "F," "G," and "H" attached hereto. A copy of the addendum to the contract (minus plans, specifications, change orders and other related documents as these are too voluminous to attach) is attached hereto as Exhibit "C" (OFF-SITE CONTRACT). WESTWIND does not possess a signed copy of the AIA A107 form contract between the parties as referenced in the addendum.

13.    All duties, conditions precedent, and statutory requisites to bringing suit have occurred, have been performed, or have been waived.

14.    Plaintiff has been caused to retain counsel to maintain this action and has been obligated to pay reasonable attorney's fees.

## COUNT I
### (Breach of Contract as to ON-SITE CONTRACT)

15.    WESTWIND realleges paragraphs 1, 2, 4, 10, 11, 12, and 13 as if fully set forth herein.

16.    WESTWIND provided labor, materials, and services to COCONUT 41 and the PROPERTY pursuant to, and in accordance with, the ON-SITE CONTRACT and substantially completed its requested obligations under the ON-SITE CONTRACT.

17.    WESTWIND would have completed all items included in the scope of work under the ON-SITE CONTRACT had it not been restricted from doing so by the actions of COCONUT 41 including non-payment and failure to have the property platted to allow for the remaining work to be completed.

18.    All conditions under the ON-SITE CONTRACT have been performed or waived.

19.     COCONUT 41 has failed to pay all sums due as required to be paid pursuant to the ON-SITE CONTRACT. In particular, COCONUT 41 has failed to pay WESTWIND retainage held by COCONUT 41.

20.     COCONUT 41 has abandoned the work to be performed under this contract. WESTWIND has billed COCONUT 41 for the retainage based on this abandonment and sent a letter to COCONUT 41 demanding payment of the retainage. A copy of the letter dated January 6, 2010 is attached hereto as Exhibit "D".

21.     WESTWIND has suffered general damages as stated above and special damages in the form of lost profits as a result of COCONUT 41's breach of the ON-SITE CONTRACT.

WHEREFORE, WESTWIND demands judgment for general damages and special damages against COCONUT 41, plus interest, and any other such relief as the Court deems proper.

## COUNT II
### (Breach of Contract as to OFF-SITE CONTRACT)

22.     WESTWIND realleges paragraphs 1, 2, 4, 10, 11, 12, and 13 as if fully set forth herein.

23.     WESTWIND provided labor, materials, and services to COCONUT 41 and the PROPERTY pursuant to, and in accordance with the OFF-SITE CONTRACT.

24.     All conditions under the OFF-SITE CONTRACT have been performed or waived.

25.     COCONUT 41 has failed to pay all sums due as required to be paid pursuant to the OFF-SITE CONTRACT. In particular, COCONUT 41 has failed to pay

WESTWIND for a portion of the labor, materials, and services furnished and retainage held by COCONUT 41.

26.  WESTWIND has billed COCONUT 41 for the labor, materials, and services furnished along with retainage due under the OFF-SITE CONTRACT and sent a letter to COCONUT 41 demanding payment of the retainage. A copy of the letter dated January 6, 2010 is attached hereto as Exhibit "D".

27.  WESTWIND has suffered damages in the amount of $195,554.32 plus loss of use of funds as a result of COCONUT 41's breach of the OFF-SITE CONTRACT.

WHEREFORE, WESTWIND demands judgment for damages against COCONUT 41, in the amount of $195,554.32, plus interest, and any other such relief as the Court deems proper.

## COUNT III
### (Enforce Construction Lien)

28.  WESTWIND realleges paragraphs 1 through 14 as if fully set forth herein.

29.  This is an action to enforce a construction lien pursuant to Chapters 713 and 85, Florida Statutes.

30.  HG COCONUT was and is the fee simple owner of the property more fully described in Exhibit "E".

31.  COCONUT 41 was and is the fee simple owner of the property more fully described in Exhibit "F".

32.  IBRERIABANK, as successor in interest to Orion Bank (who is still listed as property owner) was and is the fee simple owner of the property more fully described in Exhibit "G".

6

33. FDIC as receiver for FLORIDA COMMUITY BANK was and is the fee simple owner of the property more fully described in Exhibit "H".

34. Pursuant to the OFF-SITE CONTRACT entered into between COCONUT 41 and WESTWIND, WESTWIND performed subdivision improvements, as defined in § 713.04, Florida Statutes, for the benefit of HG COCONUT, COCONUT 41, IBERIABANK, and FDIC.

35. All conditions under the OFF-SITE CONTRACT have been performed or waived.

36. Due to the nature of the work, § 713.07, Florida Statutes does not require WESTWIND to serve a Notice to Owner on HG COCONUT, IBERIABANK, or FDIC. WESTWIND was not required to serve a Notice to Owner on COCONUT 41 as WESTWIND was in direct privity with COCONUT 41.

37. WESTWIND first furnished labor, materials, and services pursuant to the OFF-SITE CONTRACT for the improvement of the properties on February 18, 2008.

38. WESTWIND last furnished labor, materials, and services pursuant to the OFF-SITE CONTRACT for the improvement of the properties on September 28, 2009.

39. COCONUT 41 has breached the OFF-SITE CONTRACT by failing to pay WESTWIND the sum of $195,554.32 for labor, materials, and services furnished in connection with the improvement of the properties pursuant to the OFF-SITE CONTRACT.

40. WESTWIND has billed COCONUT 41 for the labor, materials, and services furnished along with retainage due under the OFF-SITE CONTRACT and sent

a letter to COCONUT 41 demanding payment of the retainage. A copy of the letter dated January 6, 2010 is attached hereto as Exhibit "D".

41. WESTWIND recorded its Claim of Lien against the properties in the amount of $195,554.32, in Official Records Instrument Number 2009000339207, Public Records of Lee County, Florida on December 22, 2009. A true and correct copy of the claim of lien is attached hereto as Exhibit "I".

42. WESTWIND served a true copy of said Claim of Lien on HG COCONUT, COCONUT 41, IBERIABANK, and FLORIDA COMMUNITY BANK via Certified Mail within 15 days of recording.

43. This action was filed within one year of recording the Claim of Lien.

44. WESTWIND gave it's Contractor's Final Payment Affidavit to COCONUT 41 pursuant to § 713.06, Florida Statutes.

45. AJAX may have an interest in some or all of the properties based on the Claim of Lien recorded in Official Records Instrument Number 2009000309164, Public Records of Lee County, Florida on November 18, 2009, but the interest of WESTWIND is superior to that of AJAX.

46. HOLE MONTES may have an interest in some or all of the properties based on the Claim of Lien recorded in Official Records Instrument Number 2009000343544, Public Records of Lee County, Florida on December 29, 2009, but the interest of WESTWIND is superior to that of HOLE MONTES.

WHEREFORE, WESTWIND prays that this Court:

A. Recognize its lien claim in the amount found to be due, plus interest, costs and attorney's fees;

8

B.     Render personal money judgment against COCONUT 41;

C.     Order the properties sold to pay the claim of WESTWIND, free and clear of the claims of all parties herein named;

D.     Grant such other equitable relief deemed appropriate; and

E.     Other such relief as the Court deems proper.

### COUNT IV
### (Unjust Enrichment as to HG COCONUT)

47.     WESTWIND realleges paragraphs 2, 4, 7, 10, 11, 12, and 13 as if fully set forth herein.

48.     This Count for equitable restitution is pled in the alternative in the event there is an infirmity with WESTWIND's claims at law.

49.     WESTWIND conferred a benefit on HG COCONUT by rendering labor, materials, and services for the improvement and benefit of the properties which HG COCONUT owns.

50.     WESTWIND expected compensation for the rendering of labor, materials, and services for the improvement and benefit of the property which HG COCONUT owns.

51.     HG COCONUT has not paid the value of the labor, materials, and services rendered by WESTWIND.

52.     HG COCONUT isindebted to WESTWIND for the reasonable value of services rendered by WESTWIND at the request of COCONUT 41, plus costs and interest.

53.     HG COCONUT has voluntarily accepted said benefits and has used the benefits conferred to the detriment of WESTWIND.

54.    HG COCONUT has been unjustly enriched by the labor, materials, and services rendered by WESTWIND.

55.    WESTWIND is entitled to recover $336,675.38 as the reasonable value of the services rendered for benefit of the HG COCONUT.

56.    WESTWIND has no adequate remedy at law.

WHEREFORE, WESTWIND, demands judgment against HG COCONUT for the reasonable value of the work performed by WESTWIND for the benefit of HG COCONUT, together with interest, costs, and such other and other such relief as the Court deems proper.

## COUNT V
### (Unjust Enrichment as to COCONUT 41)

57.    WESTWIND realleges paragraphs 2, 4, 10, 11, 12, and 13 as if fully set forth herein.

58.    This Count for equitable restitution is pled in the alternative in the event there is an infirmity with WESTWIND's claims at law.

59.    WESTWIND conferred a benefit on COCONUT 41 by rendering labor, materials, and services for the improvement and benefit of the properties which HG COCONUT owns.

60.    WESTWIND expected compensation for the rendering of labor, materials, and services for the improvement and benefit of the property which COCONUT 41 owns.

61.    COCONUT 41 has not paid the value of the labor, materials, and services rendered by WESTWIND.

62.     COCONUT 41 is indebted to WESTWIND for the reasonable value of services rendered by WESTWIND at the request of COCONUT 41, plus costs and interest.

63.     COCONUT 41 has voluntarily accepted said benefits and has used the benefits conferred to the detriment of WESTWIND.

64.     COCONUT 41 has been unjustly enriched by the labor, materials, and services rendered by WESTWIND.

65.     WESTWIND is entitled to recover $336,675.38 as the reasonable value of the services rendered for benefit of the COCONUT 41.

66.     WESTWIND has no adequate remedy at law.

WHEREFORE, WESTWIND, demands judgment against COCONUT 41 for the reasonable value of the work performed by WESTWIND for the benefit of COCONUT 41, together with interest, costs, and such other and other such relief as the Court deems proper.

## COUNT VI
### (Unjust Enrichment as to IBERIABANK)

67.     WESTWIND realleges paragraphs 2, 3, 4, 10, 11, 12, and 13 as if fully set forth herein.

68.     This Count for equitable restitution is pled in the alternative in the event there is an infirmity with WESTWIND's claims at law.

69.     WESTWIND conferred a benefit on IBERIABANK by rendering labor, materials, and services for the improvement and benefit of the properties which IBERIABANK owns.

70. WESTWIND expected compensation for the rendering of labor, materials, and services for the improvement and benefit of the property which IBERIABANK owns.

71. IBERIABANK has not paid the value of the labor, materials, and services rendered by WESTWIND.

72. IBERIABANK is indebted to WESTWIND for the reasonable value of services rendered by WESTWIND at the request of COCONUT 41, plus costs and interest.

73. IBERIABANK has voluntarily accepted said benefits and has used the benefits conferred to the detriment of WESTWIND.

74. IBERIABANK has been unjustly enriched by the labor, materials, and services rendered by WESTWIND.

75. WESTWIND is entitled to recover $336,675.38 as the reasonable value of the services rendered for benefit of the IBERIABANK.

76. WESTWIND has no adequate remedy at law.

WHEREFORE, WESTWIND, demands judgment against IBERIABANK for the reasonable value of the work performed by WESTWIND for the benefit of IBERIABANK, together with interest, costs, and such other and other such relief as the Court deems proper.

## COUNT VII
### (Unjust Enrichment as to FDIC)

77. WESTWIND realleges paragraphs 2, 4, 8, 9, 10, 11, 12, and 13 as if fully set forth herein.

78. This Count for equitable restitution is pled in the alternative in the event there is an infirmity with WESTWIND's claims at law.

79.     WESTWIND conferred a benefit on FDIC by rendering labor, materials, and services for the improvement and benefit of the properties which FDIC is responsible for as Receiver for FLORIDA COMMUNITY BANK.

80.     WESTWIND expected compensation for the rendering of labor, materials, and services for the improvement and benefit of the property which FDIC is responsible for as Receiver for FLORIDA COMMUNITY BANK.

81.     FDIC has not paid the value of the labor, materials, and services rendered by WESTWIND.

82.     FDIC is indebted to WESTWIND for the reasonable value of services rendered by WESTWIND at the request of COCONUT 41, plus costs and interest.

83.     FDIC has voluntarily accepted said benefits and has used the benefits conferred to the detriment of WESTWIND.

84.     FDIC has been unjustly enriched by the labor, materials, and services rendered by WESTWIND.

85.     WESTWIND is entitled to recover $336,675.38 as the reasonable value of the services rendered for benefit of the FDIC.

86.     WESTWIND has no adequate remedy at law.

WHEREFORE, WESTWIND, demands judgment against FDIC for the reasonable value of the work performed by WESTWIND for the benefit of FDIC, together with interest, costs, and such other and other such relief as the Court deems proper.

### COUNT VIII
**(Equitable Lien and Imposition of a Constructive Trust against IBERIABANK)**

87.     WESTWIND realleges paragraphs 2, 3, 4, 7, 10, 11, 12, and 13 above as if fully set forth herein.

88.     HG COCONUT and COCONUT 41 entered into a settlement agreement wherein amounts being held by counsel for HG COCONUT would be transferred to Orion Bank for disbursement to COCONUT 41 for the labor, materials, services furnished by WESTWIND in relation to the ON-SITE CONTRACT and OFF-STE CONTRACT. A copy of that settlement agreement is attached hereto as Exhibit "J" (Settlement Agreement).

89.     Subsequent to that Settlement Agreement, funds were transferred to Orion Bank for distribution pursuant the Settlement Agreement.

90.     Since those funds were earmarked for the labor, materials, services furnished by WESTWIND, a relationship was created between Orion Bank and WESTWIND to deliver those funds, which Orion Bank agreed to perform in accordance with the Settlement Agreement.

91.     WESTWIND detrimentally relied on such agreement, as a known Third-Party Beneficiary, in order to continue furnishing labor, materials, and services pursuant to the ON-SITE CONTRACT and OFF-SITE CONTRACT.

92.     Orion Bank, either through abuse of confidence (in knowingly withholding disbursements) or through mistake, failed to disburse the funds in accordance to the Settlement Agreement to the detriment of WESTWIND.

93.     IBERIABANK is liable for the actions of Orion Bank and for its own actions as successor in interest of Orion Bank.

94.     It is inequitable to allow IBERIABANK to retain those funds.

WHEREFORE, WESTWIND, respectfully demands an equitable lien and imposition of constructive trust against IBERIABANK, in the amount of $336,675.38 plus interest and costs, on funds held by Orion Bank and transferred to IBERIABANK pursuant to the Settlement Agreement and such other relief as the Court deems proper.

## COUNT IX
### (Promissory Estoppel against IBERIABANK)

95.     WESTWIND realleges paragraphs 2, 3, 4, 7, 10, 11, 12, and 13 above as if fully set forth herein.

96.     HG COCONUT and COCONUT 41 entered into a settlement agreement wherein amounts being held by counsel for HG COCONUT would be transferred to Orion Bank for disbursement to COCONUT 41 for the labor, materials, services furnished by WESTWIND in relation to the ON-SITE CONTRACT and OFF-STE CONTRACT. A copy of that settlement agreement is attached hereto as Exhibit "J" (Settlement Agreement).

97.     Subsequent to that Settlement Agreement, funds were transferred to Orion Bank for distribution pursuant the Settlement Agreement.

98.     Since those funds were earmarked for the labor, materials, services furnished by WESTWIND, a relationship was created between Orion Bank and WESTWIND to deliver those funds, which Orion Bank agreed to perform in accordance with the Settlement Agreement.

99.     Orion Bank knew or should have known that due to its financial condition that it would not be able to complete its duties as set out in the Settlement Agreement.

100. IBERIABANK, as successor in interest to Orion Bank, never intended on performing as agreed by Orion Bank in the Settlement Agreement, yet still took over the funds from Orion Bank.

101. WESTWIND detrimentally relied on such agreement, as a known Third-Party Beneficiary, in order to continue furnishing labor, materials, and services pursuant to the ON-SITE CONTRACT and OFF-SITE CONTRACT.

102. As a result of the actions of Orion Bank and IBERIABANK, as successor in interest to Orion Bank, WESTWIND has been damaged.

WHEREFORE, WESTWIND, respectfully demands this Court order IBERIBANK to release funds from the escrowed funds held by IBERIBANK pursuant to the Settlement Agreement, in the amount of $336,675.38 plus interest and costs, that those funds are given to WESTWIND for damages, and such other relief as the Court deems proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been sent U.S. Mail this 25th day of April, 2011, to: Merrick L. Gross, Esq. and Michael E. Strauch, Esq., CARLTON FIELDS, P.A., 100 Southeast Second Avenue, Suite 4200, Miami, FL 33131, Andrew I . Solis, Esq. and David T. Lupo, Esq., COHEN & GRIGSBY, P.C., 27200 Riverview Center Boulevard, Suite 309, Bonita Springs, Florida 34134, Stuart J. Levine, Esq., 601 Bayshore Blvd., Suite 720, Tampa, FL 33606, Michael R. D'Onofrio, Esq., The D'Onofrio Law Firm PA, 1415 Panther Lane, Suite 328, Naples, FL 34109, Hole Montes, Inc., 950 Encore Way, Naples, Florida 34110 and Joseph G. Foster, Esq., Porter Wright, Morris & Arthur, LLP., 9132 Strada Place, Third Floor, Naples, Florida 34108.

ATKINSON, DINER, STONE,
MANKUTA & PLOUCHA, P.A.
Attorneys for Westwind
One Financial Plaza
100 S.E. Third Avenue, Suite 1400
Ft. Lauderdale, Florida 33394
(954) 925-5501 / fax (954) 920-2711

By: _____
SEAN P. SULLIVAN
Florida Bar No.: 640964
JESSE H. DINER
Florida Bar No.: 161472

2040608

# EXHIBIT A

**BBLS
SURVEYORS & MAPPERS INC.**
1502-A RAILHEAD BLVD,
NAPLES, FLORIDA 34110
TELEPHONE: 239-597-1315
FAX: (239) 597-5207

**LEGAL DESCRIPTION
31.95 ACRE PARCEL**

A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE WEST QUARTER CORNER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE N.01°00'32"W., A DISTANCE OF 55.00 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 50.00 FOOT RIGHT-OF-WAY, AS THE SAME IS DESCRIBED IN O.R. BOOK 1738 AT PAGE 2538 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE S.89°56'40"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A DISTANCE OF 2,093.24 FEET TO THE **POINT OF BEGINNING** OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE N.00°00'28"E., A DISTANCE OF 290.01 FEET; THENCE S.89°56'39"E., A DISTANCE OF 150.73 FEET; THENCE N.00°03'21"E., A DISTANCE OF 868.82 FEET; THENCE S.88°20'48"W., A DISTANCE OF 690.29 FEET; THENCE N.01°39'12"W., A DISTANCE OF 170.00 FEET TO THE SOUTH LINE OF THE NORTH 1/2 OF THE NORTHWEST QUARTER OF SAID SECTION 9; THENCE N.88°20'48"E., ALONG SAID SOUTH LINE, A DISTANCE OF 1,080.32 FEET TO THE SOUTHWEST CORNER OF THE NORTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 9; THENCE N.88°30'03"E., ALONG THE SOUTH LINE OF THE NORTH 1/2 OF SAID NORTHEAST QUARTER, A DISTANCE OF 516.62 FEET TO THE WESTERLY RIGHT OF WAY LINE OF TAMIAMI TRAIL (STATE ROAD 45) THE SAME BEING A POINT ON A CURVE TO THE RIGHT, HAVING: A RADIUS OF 11,391.16 FEET, A CENTRAL ANGLE OF 02°56'26", A CHORD BEARING OF S.01°38'01"E., AND A CHORD LENGTH OF 584.54 FEET; THENCE ALONG SAID WESTERLY RIGHT OF WAY LINE AND THE ARC OF SAID CURVE AN ARC LENGTH OF 584.61 FEET TO THE END OF SAID CURVE; THENCE S.00°09'48"E., ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 770.12 FEET TO THE NORTHERLY RIGHT OF WAY LINE OF SAID COCONUT ROAD; THENCE N.89°56'40"W., ALONG SAID NORTHERLY RIGHT OF WAY LINE, A DISTANCE OF 1,071.87 FEET TO THE **POINT OF BEGINNING**. PARCEL CONTAINS 31.95 ACRES, MORE OR LESS.

SHEET 1 OF 3



EXHIBIT
**A**

BEARINGS REFER TO THE EAST LINE OF THE NORTHWEST QUARTER OF
SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA,
AS BEING N.01°22'14"W.

THIS PROPERTY IS SUBJECT TO EASEMENTS, RESTRICTIONS AND
RESERVATIONS OF RECORD.

_____ 08/03/05
STEVE E. BERRY, STATE OF FLORIDA, (P.S.M.. #5296)
BBLS SURVEYORS & MAPPERS INC., (L.B. #6753)

Z:\PROJECT\05151\SURVEY\REMAIN PARCELL.DOC

PROOFED BY SEB

SEE ATTACHED SKETCH
(SHEET 3 OF 3)

SHEET 2 OF 3

Page 5



SKETCH TO ACCOMPANY LEGAL DESCRIPTION

"THIS IS NOT A SURVEY"

SHEET 3 OF 3

## ADDENDUM TO ABBREVIATED FORM
## OF AGREEMENT BETWEEN OWNER AND CONTRACTOR
## FOR CONSTRUCTION PROJECTS OF LIMITED SCOPE
## AIA DOCUMENT A107, 1997 EDITION LUMP SUM
## COCONUT CROSSING PROJECT

The following provisions supplement, modify, change delete from or add to the "Abbreviated Form of Agreement between Owner and Contractor, AIA Document A107, 1997 and General Conditions ("Contract") by and between Coconut 41 LLC, ("Owner") and **Westwind Contracting** ("Contractor"). To the extent that any article or provision of the Contract Documents is modified or deleted by this Addendum, the unaltered provisions of the article, paragraph, subparagraph or clause shall remain in effect. The term "days" as utilized throughout this Addendum shall mean consecutive **calendar days** unless otherwise stated. Time is of the essence as to all time, then the parties hereto agree that as liquidated delays damages and not as a penalty, the Contractor shall pay to the Owner an amount equal to $1,000.00 for each day or portion thereof, that the date of completion is later then the date for Substantial Completion set forth. Owner shall pay to the Contractor an amount equal to $1,000.00 for each day or portion thereof, that the date of completion is earlier that the date of Substantial Completion set forth above or periods set forth in the Contract; if the work has not been completed on or before 150 calendar days after the Commencement Date as established by the Notice to Proceed.

WHEREAS, Owner and Contractor have agreed, that in consideration for the conditions, requirements and other considerations hereinafter stated and stated elsewhere in the Contract Documents as defined in the Contract shall be amended;

NOW THEREFORE, in exchange for the mutual covenants and promises and agreements set forth in this Addendum, the parties hereto agree that the Contract shall be modified and amended as follows:

### ADDENDUM TO ARTICLE 1
### *THE WORK OF THE CONTRACT*

Contractor warrants in performing the Work, it shall comply with any and all applicable national, state, county, municipal codes, ordinances and regulations including but not limited to the Florida Building Code and all applicable Lee County Amendments ("Florida Building Code") and in accordance with the Contract Documents in effect at the time this Contract is executed.

In performing its obligations under this Contract, the Contractor shall be deemed an independent Contractor and not an agent or employee of Owner. The Contractor shall have exclusive authority to manage, direct and control the Work. Owner is interested in only the results obtained and not in the methods used in achieving the results.

### ADDENDUM TO ARTICLE 2
### *DATE OF COMMENCEMENT AND*
### *SUBSTANTIAL COMPLETION*

"Substantial Completion" of the Project shall be defined as the date upon which the last of all of the following events have occurred:

(a)     All necessary approvals have been issued with respect to the Work by the appropriate governmental authorities;

(b)     Restore all utilities to operation that have been affected during performance of the Work;

(c)     Architect has issued its Certificate of Substantial Completion.

The Contractor shall submit a project schedule ("schedule") in Bar Chart Format to the Owner and ten (10) days from the date that a Notice to Proceed is issued. The schedule shall depict the salient features of the Work and shall include the start and completion date for all Work performed pursuant to this Contract. The Contractor shall update the schedule every week to reflect actual progress and to show any changes. A copy of each



EXHIBIT
B

updated schedule shall be furnished to the Owner. Review of the schedule by the Owner shall not be interpreted or construed to constitute approval by the Owner as to the accuracy or reasonableness of the schedule.

The Contractor shall provide weekly written reports to the Owner as to the progress of all Work. The Contractor shall maintain a daily log containing a record of weather, subcontractors working on the site, the number of workers, equipment on site, Work accomplished, problems encountered and similar relevant data as the Owner may reasonably require. The Owner shall have access to the log and copies shall be provided to the Owner, upon request to the Contractor or as otherwise provided in this Contract.

## ADDENDUM TO ARTICLE 3
### CONTRACT SUM

The Contract Sum **Four Million, Five Hundred Twenty Seven Thousand, Eight Hundred Seventy Dollars and no cents ($4,527,870.00)** is inclusive of all costs to perform the Work including, but not limited to, all permits, inspection fees, labor and materials. In the event that the cost of the Work exceeds the Contract Sum, Contractor shall pay such excess from its own funds and Owner shall not be required to pay any part of such excess. Furthermore, Contractor shall have no claim against Owner on account of such excess above the Contract Sum, except for properly executed change orders and unforeseen conditions as recognized by the Contract Documents including additional unit price quantities of Work.

The scope of Work and/or Contract Sum shall not be exceeded and/or performed without first acquiring a written change order executed by Owner, Contractor and Engineer.

## ADDENDUM TO ARTICLE 4
### 4.1 PROGRESS PAYMENTS

The form of such Requests for Payment shall be a notarized AIA Document G702, Application and Certification for Payment supported by AIA Document G703, "Continuation Sheet". Prior to submitting the first Application, Contractor shall submit a breakdown of line items including labor, material breakdowns and the Contractor's fee for approval by the Engineer."

The Owner shall be entitled to withhold from each payment to Contractor 10% of the amount earned including the Contractor's fee as of that pay period, as retainage. Retainage shall be paid to Contractor upon satisfaction of all conditions precedent set forth in 4.2 below.

Notwithstanding anything to the contrary, all requests for payment of the Contract Sum shall be subject to the approval of the Owner, or Owner's designee, which shall insure against all lien claims prior to any consent, approval, or payment of any portion of the Contract price to Contractor. Prior to the payment of any money hereunder by the Owner, Contractor shall make a written Application for Payment to Owner and all such Application for Payments shall comply with the following:

(a) contain a detailed and itemized schedule of values allocated to the various portions of the construction process and Project;

(b) sworn statements, waivers of lien, lien discharges from all subcontractors, material suppliers, and laborers from the previous pay period;

In each Application for Payment, Contractor shall issue a sworn certification to the Owner that such request for payment submitted by a Subcontractor represents a just estimate of costs reimbursable to Contractor under the terms of the Contract.

Owner shall review each such request for payment on the twenty-five day of each month and may make such exceptions as Owner reasonable deems necessary or appropriate within fifteen (15) days after submission to lender of each request for payment. Payment for materials on site will not be made unless these materials are securely stored to prevent theft or vandalism.

Neither Owner's review, approval nor payment for any Work rendered under this Contract shall be construed to operate as a waiver of any rights under this contract of any cause of action arising out of the

performance of this Contract, and the Contractor shall be and remain liable to the Owner in accordance with the applicable law for all damages to the Owner caused by the Contractor's failure to properly perform any portion of the Work furnished under this Contract. The rights and remedies of the Owner provided for under this Contract are in addition to other rights and remedies provided by law.

Contractor shall notify Owner the Project is Substantially Complete in accordance with Article 2. Upon notice from Contractor and Owner shall conduct a complete inspection of the Project. Thereafter, the Owner shall complete and deliver to Contractor a written Punch List specifying any Work required to conform those inspected portions of the Project to the requirements of this Contract. All Punch List Work set forth by the Owner shall be remedied in a good and workmanlike manner, no later than twenty (20) days from the delivery of the Punch List to Contractor. To the extent that the Punch List or items set forth therein have not been timely completed, the cost of repair or replacement may at Owner's sole option, be deducted from Final Payment as referenced in Article 4.2.

## 4.2 FINAL PAYMENT

Upon completion of all Work under this Contract and before Final Payment will be issued, the Contractor or shall perform the following:

(a)     Delivery to Owner of all warranties, final certifications, and similar documents.

(b)     Completion of all Punch List Items of Work.

(c)     Complete final clean-up.

(d)     Drawings prepared by Contractor which reflect the nature and extent of Work performed by Contractor at the Project.

(e)     Delivery to Owner Final Releases and Waivers of Lien from all subcontractors, laborers and materialmen.

Final Payment shall not be paid by Owner to Contractor until all conditions outlined above have been satisfied Neither the Final Payment nor any provision of the Contract Documents, nor partial or entire use of occupancy of the premises by the Owner, shall constitute an acceptance of the Work not performed in accordance with the Contract Documents, or relieve the Contractor of liability in respect to any warranties or responsibilities for any faulty materials or workmanship, which shall be replaced at **NO EXTRA COST** to the Owner.

## ADDENDUM TO ARTICLE 5
### ENUMERATION OF CONTRACT DOCUMENTS

Subparagraph 5.1.5 is modified to include this "Addendum To Abbreviated Form Of Agreement Between Owner And Contractor For Construction Projects Of Limited Scope AIA Document A107, 1997 Edition" as part of the Contract Documents.

### DELETIONS OF SPECIFIC PROVISIONS
### OF GENERAL CONDITIONS

The following provisions of the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20" are hereby deleted:

Delete the second sentence of Subparagraph 9.2;

Subparagraphs 9.10.1, 9.10.2 and all references to resolution of disputes between Owner and Contractor by arbitration are deleted and shall not be a part of the Contract Documents;

Subparagraphs 9.11 through 9.11.2 inclusive;

Subparagraphs 14.5.2 through 14.5.4 inclusive;

Subparagraphs 15.2.2 through 15.2.3 inclusive;

Subparagraphs 18.4 through 18.4.3 inclusive;

Subparagraph 19.2.2

## MODIFICATIONS TO SPECIFIC PROVISIONS
## OF GENERAL CONDITIONS

The following provisions to the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20 are hereby modified:

As to Subparagraph 7.2 delete the word "persistently" from the second line;

As to Subparagraph 7.3 delete the word "persistently" from the first line and add the following at the end of Subparagraph 7.3:

"This right shall be in addition to and not in restriction or derogation of the Owner's rights under Article 19 hereof. Further, the Owner's right to stop work shall not relieve the Contractor of any of his responsibilities and obligations under or pursuant to the Contract Documents."

As to Subparagraph 8.4 delete the words "not inherent in the quality required or permitted" from the third and fourth lines. Delete the word "may" from the seventh line and substitute with the word "shall". The last line shall read;

"If required by the Owner, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

As to revised Subparagraph 8.4 above, add the following language:

"At the time of Final Completion of the Work, Contractor shall deliver and transfer to Owner one (1) original and two (2) copies of all warranties for the Project including all manufacturer's warranties as described in the Contract Documents. Contractor shall warrant all new labor, equipment, workmanship and materials for Work performed pursuant to this Contract for a period of one year from the date of Substantial Completion as referenced herein. Contractor shall remedy all failures, malfunctions and defects, without charge to Owner, at Contractor's own cost and expense, within a reasonable time not to exceed thirty (30) days from the date of Contractor's receipt of notification of any such failure of defect. The Owner's remedy will consist of repair or replacement of the defective workmanship or materials. In the event Contractor certifies it is unable to provide a replacement, and repair is not commercially practicable or cannot be made within the time of performance, then at Owner's option, Owner may, at is sole discretion, elect to accept an amount of money equal to the reasonable repair or replacement costs of the failed or defective item, or Owner may repair or replace such items and Contractor shall immediately upon receipt of Owner's statement of the costs of such replacements or repairs pay to Owner the full amount listed in said statement(s). This warranty represents that the completed Work shall be fit for normal use, and free of all defects. Contractor also agrees to provide any and all additional warranties on materials and systems referenced in the Contract Documents. Contractor agrees to deliver the finished construction to Owner in good condition fit for the purpose for which it is intended in accordance with all applicable national, state, county, municipal codes, ordinances, and regulations including but not limited to the Florida Building Code, and the Contract Documents. The warranty dates shall commence on the date of Substantial Completion and upon acceptance of the Project in writing by the Owner. These warranties shall survive Substantial Completion of this Project. In addition to the foregoing, the cost to rebuild or restore areas damaged by the weather shall be the sole responsibility of the Contractor until thirty (30) days have elapsed after Final Payment."

Subparagraphs 8.13 through 8.13.2 are deleted. The Contractor shall execute Exhibit "A-1" attached hereto which shall be incorporated into this Addendum.

Subparagraphs 10.1 through 10..3 are deleted and replaced with the following:

"A subcontractor is a person or entity who has a direct Contract with the Contractor to perform any of the Work at the site. Unless otherwise required by the Contract Documents, the Contractor, as soon as practicable after the award of the Contract, shall furnish to the Owner in writing the names of Subcontractors for each of the principal portions of the Work. The Contractor shall have the sole obligation and responsibility to select, control and supervise all Subcontractors. However, the Contractor shall not employ subcontractor without first obtaining the approval of the Owner. Contracts between the Contractor and the Subcontractors shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the by the terms of the Contract Documents, and to assume toward the Contractor all obligations and responsibilities which the Contractor, by this Contract, assumes toward the Owner. This provision also applies to substitute Subcontractors hired during the course of construction to replace existing Subcontractors. The Contractor warrants to Owner that it and all of its subcontractors are and will be properly licensed in the State of Florida.to perform all Work relative to this Contract."

As to Subparagraph 12.3 add the following sentence:

"**Contractor shall not proceed with any change in the Work or with any Work for which an increase in the Contract Sum and/or Contract Time could be claimed without first obtaining a written change order executed by Owner and Contractor.**" Contractor's signature on a change order, even where the Contractor attempts to reserve any rights, shall constitute a full, final and complete waiver in settlement of any and all claims, demands and causes of action the Contractor has, or may have in the future arising out of or relating to the change order and the occurrences, acts, omissions,, or event upon which the change order is based.

Subparagraph 13.3 is deleted and replaced by the following paragraph:

"The Contractor shall not be entitled to any claim for damages on account of hindrance or delays from any cause whatsoever, but if occasioned by any act of god, or by act or omission on the part of the Owner, such act, hindrance, or delay may only entitle the Contractor to receive an extension of time as to the date for Substantial Completion as referenced in Article 2 above, as its sole and exclusive remedy. The Owner shall act reasonably in granting the Contractor extensions of time for delays resulting from acts or omissions by the Owner that cause the Contractor to be delayed in completing the Project. An extension of time to complete the Work shall be determined by the Owner provided that the Contractor provides the Owner with notice in writing of the cause of said act, hindrance, or delay within two (2) days after commencement of the delay. All extensions of time shall be authorized only by a written change order executed by the Owner and Contractor. Time extensions will not be approved unless formally submitted in writing for approval with appropriate supporting documentation, including but not limited to Contractor's Daily Log applicable for the period of time relevant to the delay. Contractor's failure to provide such written notice to Owner shall deprive the Contractor of his right to claim an extension of time or additional costs incurred by Contractor resulting from such delay. The providing of notice shall not of itself establish the validity of the cause of delay or of the extension of time for completion. Contractor shall be afforded an extension of time for inclement weather as determined by the Owner. This "no damage for delay" clause will encompass any damages for delay or disruption even if the Contractor completes the Work in a timely fashion in accordance with Article 2 of this Contract. Damages as referenced in this "no damage for delay clause" shall include any type of damages that are or could be awarded by any court or arbitration panel, such as, by way of general example but not limitation, tort, contract, strict liability, liquidated and/or punitive damages, damages for additional general conditions. By way of specific example but not limitation, damages as referenced within this clause includes loss of use, loss of profits, overhead and repair costs, cost of capital, replacement, loss of wages, pain and suffering, loss of production costs to replace the facilities, equipment and/or product loss, increased or extended home office overhead,

increased general conditions, loss of bonding capacity, loss of use, decrease in value, idled equipment, mobilization expenses, demobilization expenses, and/or any other item of damage or loss. The Contractor recognizes and specifically acknowledges the terms and conditions of the "no damage for delay" clause upon execution of this Contract."

As to Subparagraph 14.2(7) delete the word "persistent" in the first line.

Add the following new Subparagraphs 16.5.3 and 16.5.4 under Article 16 entitled "INSURANCE":

16.5.3 Contractor shall purchase and maintain the insurance listed in the Certificate of Insurance labeled and attached to this Contract as Exhibit "1" during the performance of Work. The Owner shall have the right to examine the proof of insurance including insurance policies and binders prior to commencement and during the performance of all Work on the Project. The Company issuing the insurance shall be licensed and authorized to issue such insurance in the State of Florida. Approval of the insurance or coverage amounts as set forth in the Contract Documents shall not, in any way release or decrease the liability of the Contractor.

Subparagraph 18.2 shall be deleted and replaced with the following:

"The Contract shall be governed by the laws of the State of Florida. The Work shall comply with the provisions of the Contract Documents, Florida Building Code and all applicable laws, statutes, ordinances, rules, regulations or orders during performance and at Final Completion."

As to Subparagraph 19.2.1 delete the words "persistently and repeatedly"

As to Subparagraph 19.2.3 delete the word "persistently";

**ADDENDUM TO ARTICLE 20**
**OTHER CONDITIONS OR PROVISIONS**

The Contractor shall supervise and direct the Work, using his best skill and attention and shall be solely responsible for all construction means, methods, materials, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract. The Contractor shall at all times enforce strict discipline and good order among his employees and shall not employ any unfit person or anyone not skilled in the task assigned to him. To the extent of a conflict among the Contract Documents as to the applicable standard of care governing performance of Work, the more stringent standard shall govern.

The Contractor warrants to the Owner that all materials and equipment incorporated in the Work shall be new. All Work performed by the Contractor shall be of good quality, free from faults and defects and shall conform with the Contract Documents, all applicable national, state, local, municipal codes, ordinances and regulations including but not limited to the Florida Building Code. All Work not conforming to these requirements shall be considered defective. The cost of removal and correction shall be at the sole expense of the Contractor.

The Contractor shall give all notices and comply with all laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the performance of the Work, and shall promptly notify the Owner if the Contract Documents are at variance with any of the foregoing standards. The Contractor expressly warrants to Owner that it shall acquire all applicable building permits, licenses and otherwise comply with all regulatory requirements of the municipal building department before commencing Work pursuant to this Contract.

The Contractor shall timely review, approve and submit all Product Data and Samples required by the Contract Documents. The Work shall be performed by the Contractor in accordance with approved submittals. All material will be tested by Contractor and approved by Owner before delivery. The Contractor at all times shall keep the premises free from accumulation of waste materials or rubbish caused by his operations. At the completion of the Work he shall remove all his waste materials and rubbish from and about the Project as well as his tools, construction equipment, machinery and surplus materials or to restore and repair and other damage created during construction.

Page 6 of 9

The Contractor shall protect and prevent damage to all unfinished portions of the Work, including but not limited to the protection of the Work from damage by the climate, theft, or vandalism. The Contractor shall defend against all suits or claims for infringement of any patent rights and shall save the Owner harmless from loss on account thereof.

Contractor shall be responsible for taking all precautions necessary to protect the buildings, contents, customers, and occupants from damage or injury from the operation and from water, debris and dust from entering the buildings during performance of the Work.

The Owner shall be afforded access to all Contractor's records related to this Project, including, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to this Contract, as kept by Contractor in the normal course of business, and the Contractor shall preserve all such records for a period of five years after the Final Payment. These documents and records shall be produced for inspection and copying by Contractor within ten (10) days from the date of Owner's written request.

In connection with any litigation arising out of this Contract, the prevailing party shall be entitled to recover from the other party said prevailing party's reasonable attorneys' fees and costs, including attorneys' fees and costs for any appellate proceedings. The exclusive jurisdiction and venue for all litigation shall be in a court of competent jurisdiction in Collier County, Florida.

The Contractor shall promptly correct any work rejected by the Owner as defective or as failing to conform to the Contract Documents whether observed before or after completion and whether or not fabricated, installed or completed. The provisions of this paragraph apply to work done by Subcontractors and Sub-Subcontractors as well as to work done by direct employees of the Contractor.

This Contract is binding upon the parties hereto, their successors and assigns and replaces any and all prior agreements or understandings between the parties hereto (whether written or oral) and cannot be modified except in a written document signed by Owner and Contractor.

This Contract is personal to Owner and cannot be assigned by the Contractor without written approval of Owner which consent shall not be unreasonably withheld.

Time is of the essence of this Contract. Where necessary to effectuate the intent of the parties, the agreements herein shall survive closing. The terms and conditions hereof shall bind and the benefits inure to the parties hereto and their respective heirs, devisees, personal representatives, successors and assigns. This Contract shall be construed under the laws of the State of Florida regardless of where executed by either party.

Any notice required or given pursuant to or in relation to the Contract Documents shall be sent certified or registered mail, postage prepaid, return receipt requested, hand deliver, facsimile transmission prior to 5:00 p.m. on the date of transmission (E.D.T. or E.S.T. as then applicable), or via overnight express courier service, as follows:

As to Owner: Joe D'Jamoos

With copies to: Paul Hinson

As to Contractor: Robert A. Parks, Executive Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Addendum on this _16_ day of _June_, 2005. 6

Signed, sealed and delivered
in the presence of:

_____
Signature of Witness

_____
Print Name of Witness

_____
Signature of Witness

_____
Print Name of Witness


_____
Signature of Witness

_____
Print Name of Witness

_____
Signature of Witness

_____
Print Name of Witness

295474_1.DOC

(OWNER)

By _____
        President

Attest _____
        Secretary


(CONTRACTOR)

By _____
        President

Attest _____
        Secretary

## Exhibit "A-1"

"The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work. Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to (1) all employees performing the Work and other persons who may be affected thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority bearing on the safety of persons and property and their protection from damage, injury or loss. To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, any Sub-Subcontractor, any material or equipment supplier, anyone directly or indirectly employed by any of them. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph. In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in anyway by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property, resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or utilized by Contractor relating to the performance of Work as described in this Contract. This indemnification provision is incorporated by reference into the Contract Documents. The Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by the Contractor, any Subcontractor, any Sub-Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The foregoing obligations of the Contractor are in addition to his other obligations under this Contract. This provision shall survive the termination or expiration of this Contract."

Signed, sealed and delivered
in the presence of:

Signature of Witness

Print Name of Witness

Signature of Witness

Print Name of Witness

Carla Meredith
Signature of Witness

Carla Meredith
Print Name of Witness

Kimberly J. Crosier
Signature of Witness

Kimberly J. Crosier
Print Name of Witness

(OWNER)

By _____
President

Attest _____
Secretary

(CONTRACTOR)

By _____
President

Attest _____
Secretary

### ADDENDUM TO ABBREVIATED FORM
### OF AGREEMENT BETWEEN OWNER AND CONTRACTOR
### FOR CONSTRUCTION PROJECTS OF LIMITED SCOPE
### AIA DOCUMENT A107, 1997 EDITION LUMP SUM
### Coconut Road Widening

The following provisions supplement, modify, change delete from or add to the "Abbreviated Form of Agreement between Owner and Contractor, AIA Document A107, 1997 and General Conditions ("Contract") by and between **Coconut 41 LLC,** ("Owner") and **Westwind Contracting** ("Contractor"). To the extent that any article or provision of the Contract Documents is modified or deleted by this Addendum, the unaltered provisions of the article, paragraph, subparagraph or clause shall remain in effect. The term "days" as utilized throughout this Addendum shall mean consecutive **calendar** days unless otherwise stated. Time is of the essence as to all time, then the parties hereto agree that as liquidated delays damages and not as a penalty, the Contractor shall pay to the Owner an amount equal to **$1,000.00** for each day or portion thereof, that the date of completion is later than the date for Substantial Completion set forth. Owner shall pay to the Contractor an amount equal to **$1,000.00** for each day or portion thereof, that the date of completion is earlier that the date of Substantial Completion set forth above or periods set forth in the Contract; if the work has not been completed on or before 160 calendar days after the Commencement Date as established by the Notice to Proceed.

WHEREAS, Owner and Contractor have agreed, that in consideration for the conditions, requirements and other considerations hereinafter stated and stated elsewhere in the Contract Documents as defined in the Contract shall be amended;

NOW THEREFORE, in exchange for the mutual covenants and promises and agreements set forth in this Addendum, the parties hereto agree that the Contract shall be modified and amended as follows:

### ADDENDUM TO ARTICLE 1
### *THE WORK OF THE CONTRACT*

Contractor warrants in performing the Work, it shall comply with any and all applicable national, state, county, municipal codes, ordinances and regulations including but not limited to the Florida Building Code and all applicable Lee County Amendments ("Florida Building Code") and in accordance with the Contract Documents in effect at the time this Contract is executed.

In performing its obligations under this Contract, the Contractor shall be deemed an independent Contractor and not an agent or employee of Owner. The Contractor shall have exclusive authority to manage, direct and control the Work. Owner is interested in only the results obtained and not in the methods used in achieving the results.

### ADDENDUM TO ARTICLE 2
### *DATE OF COMMENCEMENT AND*
### *SUBSTANTIAL COMPLETION*

"Substantial Completion" of the Project shall be defined as the date upon which the last of all of the following events have occurred:

(a)     All necessary approvals have been issued with respect to the Work by the appropriate governmental authorities;

(b)     Restore all utilities to operation that have been affected during performance of the Work;

(c)     Architect has issued its Certificate of Substantial Completion.

The Contractor shall submit a project schedule ("schedule") in Bar Chart Format to the Owner and ten (10) days from the date that a Notice to Proceed is issued. The schedule shall depict the salient features of the Work and shall include the start and completion date for all Work performed pursuant to this Contract. The Contractor shall update the schedule every week to reflect actual progress and to show any changes. A copy of each



EXHIBIT
C

updated schedule shall be furnished to the Owner. Review of the schedule by the Owner shall not be interpreted or construed to constitute approval by the Owner as to the accuracy or reasonableness of the schedule.

The Contractor shall provide weekly written reports to the Owner as to the progress of all Work. The Contractor shall maintain a daily log containing a record of weather, subcontractors working on the site, the number of workers, equipment on site, Work accomplished, problems encountered and similar relevant data as the Owner may reasonably require. The Owner shall have access to the log and copies shall be provided to the Owner, upon request to the Contractor or as otherwise provided in this Contract.

## ADDENDUM TO ARTICLE 3
### CONTRACT SUM

The Contract Sum One Million, Five Hundred Fifty Four Thousand, Nine Hundred Three Dollars and zero cents ($1,554,903.00) is inclusive of all costs to perform the Work including, but not limited to, all permits, inspection fees, labor and materials. In the event that the cost of the Work exceeds the Contract Sum, Contractor shall pay such excess from its own funds and Owner shall not be required to pay any part of such excess. Furthermore, Contractor shall have no claim against Owner on account of such excess above the Contract Sum, except for properly executed change orders and unforeseen conditions as recognized by the Contract Documents including additional unit price quantities of Work.

The scope of Work and/or Contract Sum shall not be exceeded and/or performed without first acquiring a written change order executed by Owner, Contractor and Engineer.

## ADDENDUM TO ARTICLE 4
### 4.1 PROGRESS PAYMENTS

The form of such Requests for Payment shall be a notarized AIA Document G702, Application and Certification for Payment supported by AIA Document G703, "Continuation Sheet". Prior to submitting the first Application, Contractor shall submit a breakdown of line items including labor, material breakdowns and the Contractor's fee for approval by the Engineer."

The Owner shall be entitled to withhold from each payment to Contractor 10% of the amount earned including the Contractor's fee as of that pay period, as retainage. Retainage shall be paid to Contractor upon satisfaction of all conditions precedent set forth in 4.2 below.

Notwithstanding anything to the contrary, all requests for payment of the Contract Sum shall be subject to the approval of the Owner, or Owner's designee, which shall insure against all lien claims prior to any consent, approval, or payment of any portion of the Contract price to Contractor. Prior to the payment of any money hereunder by the Owner, Contractor shall make a written Application for Payment to Owner and all such Application for Payments shall comply with the following:

(a) contain a detailed and itemized schedule of values allocated to the various portions of the construction process and Project;

(b) sworn statements, waivers of lien, lien discharges from all subcontractors, material suppliers, and laborers from the previous pay period;

In each Application for Payment, Contractor shall issue a sworn certification to the Owner that such request for payment submitted by a Subcontractor represents a just estimate of costs reimbursable to Contractor under the terms of the Contract.

Owner shall review each such request for payment on the twenty-five day of each month and may make such exceptions as Owner reasonable deems necessary or appropriate within fifteen (15) days after submission to lender of each request for payment. Payment for materials on site will not be made unless these materials are securely stored to prevent theft or vandalism.

Neither Owner's review, approval nor payment for any Work rendered under this Contract shall be construed to operate as a waiver of any rights under this contract of any cause of action arising out of the

performance of this Contract, and the Contractor shall be and remain liable to the Owner in accordance with the applicable law for all damages to the Owner caused by the Contractor's failure to properly perform any portion of the Work furnished under this Contract. The rights and remedies of the Owner provided for under this Contract are in addition to other rights and remedies provided by law.

Contractor shall notify Owner the Project is Substantially Complete in accordance with Article 2. Upon notice from Contractor and Owner shall conduct a complete inspection of the Project. Thereafter, the Owner shall complete and deliver to Contractor a written Punch List specifying any Work required to conform those inspected portions of the Project to the requirements of this Contract. All Punch List Work set forth by the Owner shall be remedied in a good and workmanlike manner, no later than twenty (20) days from the delivery of the Punch List to Contractor. To the extent that the Punch List or items set forth therein have not been timely completed, the cost of repair or replacement may at Owner's sole option, be deducted from Final Payment as referenced in Article 4.2.

## 4.2 FINAL PAYMENT

Upon completion of all Work under this Contract and before Final Payment will be issued, the Contractor or shall perform the following:

     (a)     Delivery to Owner of all warranties, final certifications, and similar documents.

     (b)     Completion of all Punch List Items of Work.

     (c)     Complete final clean-up.

     (d)     Drawings prepared by Contractor which reflect the nature and extent of Work performed by Contractor at the Project.

     (e)     Delivery to Owner Final Releases and Waivers of Lien from all subcontractors, laborers and materialmen.

Final Payment shall not be paid by Owner to Contractor until all conditions outlined above have been satisfied. Neither the Final Payment nor any provision of the Contract Documents, nor partial or entire use of occupancy of the premises by the Owner, shall constitute an acceptance of the Work not performed in accordance with the Contract Documents, or relieve the Contractor of liability in respect to any warranties or responsibilities for any faulty materials or workmanship, which shall be replaced at NO EXTRA COST to the Owner.

## ADDENDUM TO ARTICLE 5
## ENUMERATION OF CONTRACT DOCUMENTS

Subparagraph 5.1.5 is modified to include this "Addendum To Abbreviated Form Of Agreement Between Owner And Contractor For Construction Projects Of Limited Scope AIA Document A107, 1997 Edition" as part of the Contract Documents.

## DELETIONS OF SPECIFIC PROVISIONS
## OF GENERAL CONDITIONS

The following provisions of the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20" are hereby deleted:

Delete the second sentence of Subparagraph 9.2;

Subparagraphs 9.10.1, 9.10.2 and all references to resolution of disputes between Owner and Contractor by arbitration are deleted and shall not be a part of the Contract Documents;

Subparagraphs 9.11 through 9.11.2 inclusive;

Subparagraphs 14.5.2 through 14.5.4 inclusive;

Subparagraphs 15.2.2 through 15.2.3 inclusive;

Subparagraphs 18.4 through 18.4.3 inclusive;

Subparagraph 19.2.2

## MODIFICATIONS TO SPECIFIC PROVISIONS
## OF GENERAL CONDITIONS

The following provisions to the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20 are hereby modified:

As to Subparagraph 7.2 delete the word "persistantly" from the second line;

As to Subparagraph 7.3 delete the word "persistently" from the first line and add the following at the end of Subparagraph 7.3:

"This right shall be in addition to and not in restriction or derogation of the Owner's rights under Article 19 hereof. Further, the Owner's right to stop work shall not relieve the Contractor of any of his responsibilities and obligations under or pursuant to the Contract Documents."

As to Subparagraph 8.4 delete the words "not inherent in the quality required or permitted" from the third and fourth lines. Delete the word "may" from the seventh line and substitute with the word "shall". The last line shall read;

"If required by the Owner, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

As to revised Subparagraph 8.4 above, add the following language:

"At the time of Final Completion of the Work, Contractor shall deliver and transfer to Owner one (1) original and two (2) copies of all warranties for the Project including all manufacturer's warranties as described in the Contract Documents. Contractor shall warrant all new labor, equipment, workmanship and materials for Work performed pursuant to this Contract for a period of one year from the date of Substantial Completion as referenced herein. Contractor shall remedy all failures, malfunctions and defects, without charge to Owner, at Contractor's own cost and expense, within a reasonable time not to exceed thirty (30) days from the date of Contractor's receipt of notification of any such failure of defect. The Owner's remedy will consist of repair or replacement of the defective workmanship or materials. In the event Contractor certifies it is unable to provide a replacement, and repair is not commercially practicable or cannot be made within the time of performance, then at Owner's option, Owner may, at is sole discretion, elect to accept an amount of money equal to the reasonable repair or replacement costs of the failed or defective item, or Owner may repair or replace such items and Contractor shall immediately upon receipt of Owner's statement of the costs of such replacements or repairs pay to Owner the full amount listed in said statement(s). This warranty represents that the completed Work shall be fit for normal use, and free of all defects. Contractor also agrees to provide any and all additional warranties on materials and systems referenced in the Contract Documents. Contractor agrees to deliver the finished construction to Owner in good condition fit for the purpose for which it is intended in accordance with all applicable national, state, county, municipal codes, ordinances, and regulations including but not limited to the Florida Building Code, and the Contract Documents. The warranty dates shall commence on the date of Substantial Completion and upon acceptance of the Project in writing by the Owner. These warranties shall survive Substantial Completion of this Project. In addition to the foregoing, the cost to rebuild or restore areas damaged by the weather shall be the sole responsibility of the Contractor until thirty (30) days have elapsed after Final Payment."

Subparagraphs 8.13 through 8.13.2 are deleted. The Contractor shall execute Exhibit "A-1" attached hereto which shall be incorporated into this Addendum.

Subparagraphs 10.1 through 10..3 are deleted and replaced with the following:

"A subcontractor is a person or entity who has a direct Contract with the Contractor to perform any of the Work at the site. Unless otherwise required by the Contract Documents, the Contractor, as soon as practicable after the award of the Contract, shall furnish to the Owner in writing the names of Subcontractors for each of the principal portions of the Work. The Contractor shall have the sole obligation and responsibility to select, control and supervise all Subcontractors. However, the Contractor shall not employ subcontractor without first obtaining the approval of the Owner. Contracts between the Contractor and the Subcontractors shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the by the terms of the Contract Documents, and to assume toward the Contractor all obligations and responsibilities which the Contractor, by this Contract, assumes toward the Owner. This provision also applies to substitute Subcontractors hired during the course of construction to replace existing Subcontractors. The Contractor warrants to Owner that it and all of its subcontractors are and will be properly licensed in the State of Florida to perform all Work relative to this Contract."

As to Subparagraph 12.3 add the following sentence:

**"Contractor shall not proceed with any change in the Work or with any Work for which an increase in the Contract Sum and/or Contract Time could be claimed without first obtaining a written change order executed by Owner and Contractor."** Contractor's signature on a change order, even where the Contractor attempts to reserve any rights, shall constitute a full, final and complete waiver in settlement of any and all claims, demands and causes of action the Contractor has, or may have in the future arising out of or relating to the change order and the occurrences, acts, omissions,, or event upon which the change order is based.

Subparagraph 13.3 is deleted and replaced by the following paragraph:

"The Contractor shall not be entitled to any claim for damages on account of hindrance or delays from any cause whatsoever, but if occasioned by any act of god, or by act or omission on the part of the Owner, such act, hindrance, or delay may only entitle the Contractor to receive an extension of time as to the date for Substantial Completion as referenced in Article 2 above, as its sole and exclusive remedy. The Owner shall act reasonably in granting the Contractor extensions of time for delays resulting from acts or omissions by the Owner that cause the Contractor to be delayed in completing the Project. An extension of time to complete the Work shall be determined by the Owner provided that the Contractor provides the Owner with notice in writing of the cause of said act, hindrance, or delay within two (2) days after commencement of the delay. All extensions of time shall be authorized only by a written change order executed by the Owner and Contractor. Time extensions will not be approved unless formally submitted in writing for approval with appropriate supporting documentation, including but not limited to Contractor's Daily Log applicable for the period of time relevant to the delay. Contractor's failure to provide such written notice to Owner shall deprive the Contractor of his right to claim an extension of time or additional costs incurred by Contractor resulting from such delay. The providing of notice shall not of itself establish the validity of the cause of delay or of the extension of time for completion. Contractor shall be afforded an extension of time for inclement weather as determined by the Owner. This "no damage for delay" clause will encompass any damages for delay or disruption even if the Contractor completes the Work in a timely fashion in accordance with Article 2 of this Contract. Damages as referenced in this "no damage for delay clause" shall include any type of damages that are or could be awarded by any court or arbitration panel, such as, by way of general example but not limitation, tort, contract, strict liability, liquidated and/or punitive damages, damages for additional general conditions. By way of specific example but not limitation, damages as referenced within this clause includes loss of use, loss of profits, overhead and repair costs, cost of capital, replacement, loss of wages, pain and suffering, loss of production costs to replace the facilities, equipment and/or product loss, increased or extended home office overhead,

increased general conditions, loss of bonding capacity, loss of use, decrease in value, idled equipment, mobilization expenses, demobilization expenses, and/or any other item of damage or loss. The Contractor recognizes and specifically acknowledges the terms and conditions of the "no damage for delay" clause upon execution of this Contract."

As to Subparagraph 14.2(7) delete the word "persistent" in the first line.

Add the following new Subparagraphs 16.5.3 and 16.5.4 under Article 16 entitled "INSURANCE":

16.5.3 Contractor shall purchase and maintain the insurance listed in the Certificate of Insurance labeled and attached to this Contract as Exhibit "1" during the performance of Work. The Owner shall have the right to examine the proof of insurance including insurance policies and binders prior to commencement and during the performance of all Work on the Project. The Company issuing the insurance shall be licensed and authorized to issue such insurance in the State of Florida. Approval of the insurance or coverage amounts as set forth in the Contract Documents shall not, in any way release or decrease the liability of the Contractor.

Subparagraph 18.2 shall be deleted and replaced with the following:

"The Contract shall be governed by the laws of the State of Florida. The Work shall comply with the provisions of the Contract Documents, Florida Building Code and all applicable laws, statutes, ordinances, rules, regulations or orders during performance and at Final Completion."

As to Subparagraph 19.2.1 delete the words "persistently and repeatedly"

As to Subparagraph 19.2.3 delete the word "persistently";

## ADDENDUM TO ARTICLE 20
### OTHER CONDITIONS OR PROVISIONS

The Contractor shall supervise and direct the Work, using his best skill and attention and shall be solely responsible for all construction means, methods, materials, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract. The Contractor shall at all times enforce strict discipline and good order among his employees and shall not employ any unfit person or anyone not skilled in the task assigned to him. To the extent of a conflict among the Contract Documents as to the applicable standard of care governing performance of Work, the more stringent standard shall govern.

The Contractor warrants to the Owner that all materials and equipment incorporated in the Work shall be new. All Work performed by the Contractor shall be of good quality, free from faults and defects and shall conform with the Contract Documents, all applicable national, state, local, municipal codes, ordinances and regulations including but not limited to the Florida Building Code. All Work not conforming to these requirements shall be considered defective. The cost of removal and correction shall be at the sole expense of the Contractor.

The Contractor shall give all notices and comply with all laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the performance of the Work, and shall promptly notify the Owner if the Contract Documents are at variance with any of the foregoing standards. The Contractor expressly warrants to Owner that it shall acquire all applicable building permits, licenses and otherwise comply with all regulatory requirements of the municipal building department before commencing Work pursuant to this Contract.

The Contractor shall timely review, approve and submit all Product Data and Samples required by the Contract Documents. The Work shall be performed by the Contractor in accordance with approved submittals. All material will be tested by Contractor and approved by Owner before delivery. The Contractor at all times shall keep the premises free from accumulation of waste materials or rubbish caused by his operations. At the completion of the Work he shall remove all his waste materials and rubbish from and about the Project as well as his tools, construction equipment, machinery and surplus materials or to restore and repair and other damage created during construction.

The Contractor shall protect and prevent damage to all unfinished portions of the Work, including but not limited to the protection of the Work from damage by the climate, theft, or vandalism. The Contractor shall defend against all suits or claims for infringement of any patent rights and shall save the Owner harmless from loss on account thereof.

Contractor shall be responsible for taking all precautions necessary to protect the buildings, contents, customers, and occupants from damage or injury from the operation and from water, debris and dust from entering the buildings during performance of the Work.

The Owner shall be afforded access to all Contractor's records related to this Project, including, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to this Contract, as kept by Contractor in the normal course of business, and the Contractor shall preserve all such records for a period of five years after the Final Payment. These documents and records shall be produced for inspection and copying by Contractor within ten (10) days from the date of Owner's written request.

In connection with any litigation arising out of this Contract, the prevailing party shall be entitled to recover from the other party said prevailing party's reasonable attorneys' fees and costs, including attorneys' fees and costs for any appellate proceedings. The exclusive jurisdiction and venue for all litigation shall be in a court of competent jurisdiction in Collier County, Florida.

The Contractor shall promptly correct any work rejected by the Owner as defective or as failing to conform to the Contract Documents whether observed before or after completion and whether or not fabricated, installed or completed. The provisions of this paragraph apply to work done by Subcontractors and Sub-Subcontractors as well as to work done by direct employees of the Contractor.

This Contract is binding upon the parties hereto, their successors and assigns and replaces any and all prior agreements or understandings between the parties hereto (whether written or oral) and cannot be modified except in a written document signed by Owner and Contractor.

This Contract is personal to Owner and cannot be assigned by the Contractor without written approval of Owner which consent shall not be unreasonably withheld.

Time is of the essence of this Contract. Where necessary to effectuate the intent of the parties, the agreements herein shall survive closing. The terms and conditions hereof shall bind and the benefits inure to the parties hereto and their respective heirs, devisees, personal representatives, successors and assigns. This Contract shall be construed under the laws of the State of Florida regardless of where executed by either party.

Any notice required or given pursuant to or in relation to the Contract Documents shall be sent certified or registered mail, postage prepaid, return receipt requested, hand deliver, facsimile transmission prior to 5:00 p.m. on the date of transmission (E.D.T. or E.S.T. as then applicable), or via overnight express courier service, as follows:

As to Owner: Joe D'Jamoos

With copies to: Paul Hinson

As to Contractor: Robert A. Parks, Executive Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Addendum on this _16_ day of _June_, 2005 6

Signed, sealed and delivered
in the presence of:

_____
Signature of Witness

_Jennifer James_
Print Name of Witness

_Andrew DJames_
Signature of Witness

_Andrew DJames_
Print Name of Witness


_Darla Meredith_
Signature of Witness

_Darla Meredith_
Print Name of Witness

_Kimberly A. Crosier_
Signature of Witness

_Kimberly A. Crosier_
Print Name of Witness

295474_1.DOC

(OWNER)

By _____
        President

Attest _____
              Secretary


(CONTRACTOR)

By _____
        President

Attest _____
              Secretary

## Exhibit "A-1"

"The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work. Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to (1) all employees performing the Work and other persons who may be affected thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority bearing on the safety of persons and property and their protection from damage, injury or loss. To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, any Sub-Subcontractor, any material or equipment supplier, anyone directly or indirectly employed by any of them. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph. In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in anyway by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property, resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or utilized by Contractor relating to the performance of Work as described in this Contract. This indemnification provision is incorporated by reference into the Contract Documents. The Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by the Contractor, any Subcontractor, any Sub-Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The foregoing obligations of the Contractor are in addition to his other obligations under this Contract. This provision shall survive the termination or expiration of this Contract."

Signed, sealed and delivered
in the presence of:

Signature of Witness

Print Name of Witness

Signature of Witness

Print Name of Witness

(OWNER)

By _____
President

Attest _____
Secretary

Signature of Witness

Print Name of Witness

Signature of Witness

Print Name of Witness

(CONTRACTOR)

By _____
President

Attest _____
Secretary

## ADDENDUM TO ABBREVIATED FORM
## OF AGREEMENT BETWEEN OWNER AND CONTRACTOR
## FOR CONSTRUCTION PROJECTS OF LIMITED SCOPE
## AIA DOCUMENT A107, 1997 EDITION LUMP SUM
### Coconut Road Widening

The following provisions supplement, modify, change delete from or add to the "Abbreviated Form of Agreement between Owner and Contractor, AIA Document A107, 1997 and General Conditions ("Contract") by and between **Coconut 41 LLC,** ("Owner") and **Westwind Contracting** ("Contractor"). To the extent that any article or provision of the Contract Documents is modified or deleted by this Addendum, the unaltered provisions of the article, paragraph, subparagraph or clause shall remain in effect. The term "days" as utilized throughout this Addendum shall mean consecutive **calendar days** unless otherwise stated. Time is of the essence as to all time, then the parties hereto agree that as liquidated delays damages and not as a penalty, the Contractor shall pay to the Owner an amount equal to **$1,000.00** for each day or portion thereof, that the date of completion is later than the date for Substantial Completion set forth. Owner shall pay to the Contractor an amount equal to **$1,000.00** for each day or portion thereof, that the date of completion is earlier that the date of Substantial Completion set forth above or periods set forth in the Contract; if the work has not been completed on or before 150 calendar days after the Commencement Date as established by the Notice to Proceed.

WHEREAS, Owner and Contractor have agreed, that in consideration for the conditions, requirements and other considerations hereinafter stated and stated elsewhere in the Contract Documents as defined in the Contract shall be amended;

NOW THEREFORE, in exchange for the mutual covenants and promises and agreements set forth in this Addendum, the parties hereto agree that the Contract shall be modified and amended as follows:

### ADDENDUM TO ARTICLE 1
### *THE WORK OF THE CONTRACT*

Contractor warrants in performing the Work, it shall comply with any and all applicable national, state, county, municipal codes, ordinances and regulations including but not limited to the Florida Building Code and all applicable Lee County Amendments ("Florida Building Code") and in accordance with the Contract Documents in effect at the time this Contract is executed.

In performing its obligations under this Contract, the Contractor shall be deemed an independent Contractor and not an agent or employee of Owner. The Contractor shall have exclusive authority to manage, direct and control the Work. Owner is interested in only the results obtained and not in the methods used in achieving the results.

### ADDENDUM TO ARTICLE 2
### *DATE OF COMMENCEMENT AND*
### *SUBSTANTIAL COMPLETION*

"Substantial Completion" of the Project shall be defined as the date upon which the last of all of the following events have occurred:

(a)    All necessary approvals have been issued with respect to the Work by the appropriate governmental authorities;

(b)    Restore all utilities to operation that have been affected during performance of the Work;

(c)    Architect has issued its Certificate of Substantial Completion.

The Contractor shall submit a project schedule ("schedule") in Bar Chart Format to the Owner and ten (10) days from the date that a Notice to Proceed is issued. The schedule shall depict the salient features of the Work and shall include the start and completion date for all Work performed pursuant to this Contract. The Contractor shall update the schedule every week to reflect actual progress and to show any changes. A copy of each



EXHIBIT

updated schedule shall be furnished to the Owner. Review of the schedule by the Owner shall not be interpreted or construed to constitute approval by the Owner as to the accuracy or reasonableness of the schedule.

The Contractor shall provide weekly written reports to the Owner as to the progress of all Work. The Contractor shall maintain a daily log containing a record of weather, subcontractors working on the site, the number of workers, equipment on site, Work accomplished, problems encountered and similar relevant data as the Owner may reasonably require. The Owner shall have access to the log and copies shall be provided to the Owner, upon request to the Contractor or as otherwise provided in this Contract.

### ADDENDUM TO ARTICLE 3
### *CONTRACT SUM*

The Contract Sum One Million, Five Hundred Fifty Four Thousand, Nine Hundred Three Dollars and zero cents ($1,554,903.00) is inclusive of all costs to perform the Work including, but not limited to, all permits, inspection fees, labor and materials. In the event that the cost of the Work exceeds the Contract Sum, Contractor shall pay such excess from its own funds and Owner shall not be required to pay any part of such excess. Furthermore, Contractor shall have no claim against Owner on account of such excess above the Contract Sum, except for properly executed change orders and unforeseen conditions as recognized by the Contract Documents including additional unit price quantities of Work.

The scope of Work and/or Contract Sum shall not be exceeded and/or performed without first acquiring a written change order executed by Owner, Contractor and Engineer.

### ADDENDUM TO ARTICLE 4
### *4.1 PROGRESS PAYMENTS*

The form of such Requests for Payment shall be a notarized AIA Document G702, Application and Certification for Payment supported by AIA Document G703, "Continuation Sheet". Prior to submitting the first Application, Contractor shall submit a breakdown of line items including labor, material breakdowns and the Contractor's fee for approval by the Engineer.°

The Owner shall be entitled to withhold from each payment to Contractor 10% of the amount earned including the Contractor's fee as of that pay period, as retainage. Retainage shall be paid to Contractor upon satisfaction of all conditions precedent set forth in 4.2 below.

Notwithstanding anything to the contrary, all requests for payment of the Contract Sum shall be subject to the approval of the Owner, or Owner's designee, which shall insure against all lien claims prior to any consent, approval, or payment of any portion of the Contract price to Contractor. Prior to the payment of any money hereunder by the Owner, Contractor shall make a written Application for Payment to Owner and all such Application for Payments shall comply with the following:

(a) contain a detailed and itemized schedule of values allocated to the various portions of the construction process and Project;

(b) sworn statements, waivers of lien, lien discharges from all subcontractors, material suppliers, and laborers from the previous pay period;

In each Application for Payment, Contractor shall issue a sworn certification to the Owner that such request for payment submitted by a Subcontractor represents a just estimate of costs reimbursable to Contractor under the terms of the Contract.

Owner shall review each such **request for payment on the twenty-five day of each month** and may make such exceptions as Owner reasonable deems necessary or appropriate **within fifteen (15) days** after submission to lender of each request for payment. Payment for materials on site will not be made unless these materials are securely stored to prevent theft or vandalism.

Neither Owner's review, approval nor payment for any Work rendered under this Contract shall be construed to operate as a waiver of any rights under this contract of any cause of action arising out of the

performance of this Contract, and the Contractor shall be and remain liable to the Owner in accordance with the applicable law for all damages to the Owner caused by the Contractor's failure to properly perform any portion of the Work furnished under this Contract. The rights and remedies of the Owner provided for under this Contract are in addition to other rights and remedies provided by law.

Contractor shall notify Owner the Project is Substantially Complete in accordance with Article 2. Upon notice from Contractor and Owner shall conduct a complete inspection of the Project. Thereafter, the Owner shall complete and deliver to Contractor a written Punch List specifying any Work required to conform those inspected portions of the Project to the requirements of this Contract. All Punch List Work set forth by the Owner shall be remedied in a good and workmanlike manner, no later than twenty (20) days from the delivery of the Punch List to Contractor. To the extent that the Punch List or items set forth therein have not been timely completed, the cost of repair or replacement may at Owner's sole option, be deducted from Final Payment as referenced in Article 4.2.

## *4.2 FINAL PAYMENT*

Upon completion of all Work under this Contract and before Final Payment will be issued, the Contractor or shall perform the following:

(a)     Delivery to Owner of all warranties, final certifications, and similar documents.

(b)     Completion of all Punch List Items of Work.

(c)     Complete final clean-up.

(d)     Drawings prepared by Contractor which reflect the nature and extent of Work performed by Contractor at the Project.

(e)     Delivery to Owner Final Releases and Waivers of Lien from all subcontractors, laborers and materialmen.

Final Payment shall not be paid by Owner to Contractor until all conditions outlined above have been satisfied. Neither the Final Payment nor any provision of the Contract Documents, nor partial or entire use of occupancy of the premises by the Owner, shall constitute an acceptance of the Work not performed in accordance with the Contract Documents, or relieve the Contractor of liability in respect to any warranties or responsibilities for any faulty materials or workmanship, which shall be replaced at **NO EXTRA COST** to the Owner.

### ADDENDUM TO ARTICLE 5
### *ENUMERATION OF CONTRACT DOCUMENTS*

Subparagraph 5.1.5 is modified to include this "Addendum To Abbreviated Form Of Agreement Between Owner And Contractor For Construction Projects Of Limited Scope AIA Document A107, 1997 Edition" as part of the Contract Documents.

### *DELETIONS OF SPECIFIC PROVISIONS*
### *OF GENERAL CONDITIONS*

The following provisions of the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20" are hereby deleted:

Delete the second sentence of Subparagraph 9.2;

Subparagraphs 9.10.1, 9.10.2 and all references to resolution of disputes between Owner and Contractor by arbitration are deleted and shall not be a part of the Contract Documents;

Subparagraphs 9.11 through 9.11.2 Inclusive;

Subparagraphs 14.5.2 through 14.5.4 Inclusive;

Subparagraphs 15.2.2 through 15.2.3 inclusive;

Subparagraphs 18.4 through 18.4.3 inclusive;

Subparagraph 19.2.2

## MODIFICATIONS TO SPECIFIC PROVISIONS
## OF GENERAL CONDITIONS

The following provisions to the "General Conditions of the Abbreviated Form of Agreement" as set forth in Articles 6 through 20 are hereby modified:

As to Subparagraph 7.2 delete the word "persistently" from the second line;

As to Subparagraph 7.3 delete the word "persistently" from the first line and add the following at the end of Subparagraph 7.3:

"This right shall be in addition to and not in restriction or derogation of the Owner's rights under Article 19 hereof. Further, the Owner's right to stop work shall not relieve the Contractor of any of his responsibilities and obligations under or pursuant to the Contract Documents."

As to Subparagraph 8.4 delete the words "not inherent in the quality required or permitted" from the third and fourth lines. Delete the word "may" from the seventh line and substitute with the word "shall". The last line shall read;

"If required by the Owner, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

As to revised Subparagraph 8.4 above, add the following language:

"At the time of Final Completion of the Work, Contractor shall deliver and transfer to Owner one (1) original and two (2) copies of all warranties for the Project including all manufacturer's warranties as described in the Contract Documents. Contractor shall warrant all new labor, equipment, workmanship and materials for Work performed pursuant to this Contract for a period of one year from the date of Substantial Completion as referenced herein. Contractor shall remedy all failures, malfunctions and defects, without charge to Owner, at Contractor's own cost and expense, within a reasonable time not to exceed thirty (30) days from the date of Contractor's receipt of notification of any such failure of defect. The Owner's remedy will consist of repair or replacement of the defective workmanship or materials. In the event Contractor certifies it is unable to provide a replacement, and repair is not commercially practicable or cannot be made within the time of performance, then at Owner's option, Owner may, at its sole discretion, elect to accept an amount of money equal to the reasonable repair or replacement costs of the failed or defective item, or Owner may repair or replace such items and Contractor shall immediately upon receipt of Owner's statement of the costs of such replacements or repairs pay to Owner the full amount listed in said statement(s). This warranty represents that the completed Work shall be fit for normal use, and free of all defects. Contractor also agrees to provide any and all additional warranties on materials and systems referenced in the Contract Documents. Contractor agrees to deliver the finished construction to Owner in good condition fit for the purpose for which it is intended in accordance with all applicable national, state, county, municipal codes, ordinances, and regulations including but not limited to the Florida Building Code, and the Contract Documents. The warranty dates shall commence on the date of Substantial Completion and upon acceptance of the Project in writing by the Owner. These warranties shall survive Substantial Completion of this Project. In addition to the foregoing, the cost to rebuild or restore areas damaged by the weather shall be the sole responsibility of the Contractor until thirty (30) days have elapsed after Final Payment."

Subparagraphs 8.13 through 8.13.2 are deleted. The Contractor shall execute Exhibit "A-1" attached hereto which shall be incorporated into this Addendum.

Subparagraphs 10.1 through 10..3 are deleted and replaced with the following:

"A subcontractor is a person or entity who has a direct Contract with the Contractor to perform any of the Work at the site. Unless otherwise required by the Contract Documents, the Contractor, as soon as practicable after the award of the Contract, shall furnish to the Owner in writing the names of Subcontractors for each of the principal portions of the Work. The Contractor shall have the sole obligation and responsibility to select, control and supervise all Subcontractors. However, the Contractor shall not employ subcontractor without first obtaining the approval of the Owner. Contracts between the Contractor and the Subcontractors shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the by the terms of the Contract Documents, and to assume toward the Contractor all obligations and responsibilities which the Contractor, by this Contract, assumes toward the Owner. This provision also applies to substitute Subcontractors hired during the course of construction to replace existing Subcontractors. The Contractor warrants to Owner that it and all of its subcontractors are and will be properly licensed in the State of Florida to perform all Work relative to this Contract."

As to Subparagraph 12.3 add the following sentence:

**"Contractor shall not proceed with any change in the Work or with any Work for which an increase in the Contract Sum and/or Contract Time could be claimed without first obtaining a written change order executed by Owner and Contractor."** Contractor's signature on a change order, even where the Contractor attempts to reserve any rights, shall constitute a full, final and complete waiver in settlement of any and all claims, demands and causes of action the Contractor has, or may have in the future arising out of or relating to the change order and the occurrences, acts, omissions,, or event upon which the change order is based.

Subparagraph 13.3 is deleted and replaced by the following paragraph:

"The Contractor shall not be entitled to any claim for damages on account of hindrance or delays from any cause whatsoever, but if occasioned by any act of god, or by act or omission on the part of the Owner, such act, hindrance, or delay may only entitle the Contractor to receive an extension of time as to the date for Substantial Completion as referenced in Article 2 above, as its sole and exclusive remedy. The Owner shall act reasonably in granting the Contractor extensions of time for delays resulting from acts or omissions by the Owner that cause the Contractor to be delayed in completing the Project. An extension of time to complete the Work shall be determined by the Owner provided that the Contractor provides the Owner with notice in writing of the cause of said act, hindrance, or delay within two (2) days after commencement of the delay. All extensions of time shall be authorized only by a written change order executed by the Owner and Contractor. Time extensions will not be approved unless formally submitted in writing for approval with appropriate supporting documentation, including but not limited to Contractor's Daily Log applicable for the period of time relevant to the delay. Contractor's failure to provide such written notice to Owner shall deprive the Contractor of his right to claim an extension of time or additional costs incurred by Contractor resulting from such delay. The providing of notice shall not of itself establish the validity of the cause of delay or of the extension of time for completion. Contractor shall be afforded an extension of time for inclement weather as determined by the Owner. This "no damage for delay" clause will encompass any damages for delay or disruption even if the Contractor completes the Work in a timely fashion in accordance with Article 2 of this Contract. Damages as referenced in this "no damage for delay clause" shall include any type of damages that are or could be awarded by any court or arbitration panel, such as, by way of general example but not limitation, tort, contract, strict liability, liquidated and/or punitive damages, damages for additional general conditions. By way of specific example but not limitation, damages as referenced within this clause includes loss of use, loss of profits, overhead and repair costs, cost of capital, replacement, loss of wages, pain and suffering, loss of production costs to replace the facilities, equipment and/or product loss, increased or extended home office overhead,

increased general conditions, loss of bonding capacity, loss of use, decrease in value, idled equipment, mobilization expenses, demobilization expenses, and/or any other item of damage or loss. The Contractor recognizes and specifically acknowledges the terms and conditions of the "no damage for delay" clause upon execution of this Contract."

As to Subparagraph 14.2(7) delete the word "persistent" in the first line.

Add the following new Subparagraphs 16.5.3 and 16.5.4 under Article 16 entitled "INSURANCE":

16.5.3 Contractor shall purchase and maintain the Insurance listed in the Certificate of Insurance labeled and attached to this Contract as Exhibit "1" during the performance of Work. The Owner shall have the right to examine the proof of insurance including insurance policies and binders prior to commencement and during the performance of all Work on the Project. The Company issuing the insurance shall be licensed and authorized to issue such insurance in the State of Florida. Approval of the insurance or coverage amounts as set forth in the Contract Documents shall not, in any way release or decrease the liability of the Contractor.

Subparagraph 18.2 shall be deleted and replaced with the following:

"The Contract shall be governed by the laws of the State of Florida. The Work shall comply with the provisions of the Contract Documents, Florida Building Code and all applicable laws, statutes, ordinances, rules, regulations or orders during performance and at Final Completion."

As to Subparagraph 19.2.1 delete the words "persistently and repeatedly"

As to Subparagraph 19.2.3 delete the word "persistently";

## ADDENDUM TO ARTICLE 20
### OTHER CONDITIONS OR PROVISIONS

The Contractor shall supervise and direct the Work, using his best skill and attention and shall be solely responsible for all construction means, methods, materials, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract. The Contractor shall at all times enforce strict discipline and good order among his employees and shall not employ any unfit person or anyone not skilled in the task assigned to him. To the extent of a conflict among the Contract Documents as to the applicable standard of care governing performance of Work, the more stringent standard shall govern.

The Contractor warrants to the Owner that all materials and equipment incorporated in the Work shall be new. All Work performed by the Contractor shall be of good quality, free from faults and defects and shall conform with the Contract Documents, all applicable national, state, local, municipal codes, ordinances and regulations including but not limited to the Florida Building Code. All Work not conforming to these requirements shall be considered defective. The cost of removal and correction shall be at the sole expense of the Contractor.

The Contractor shall give all notices and comply with all laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the performance of the Work, and shall promptly notify the Owner if the Contract Documents are at variance with any of the foregoing standards. The Contractor expressly warrants to Owner that it shall acquire all applicable building permits, licenses and otherwise comply with all regulatory requirements of the municipal building department before commencing Work pursuant to this Contract.

The Contractor shall timely review, approve and submit all Product Data and Samples required by the Contract Documents. The Work shall be performed by the Contractor in accordance with approved submittals. All material will be tested by Contractor and approved by Owner before delivery. The Contractor at all times shall keep the premises free from accumulation of waste materials or rubbish caused by his operations. At the completion of the Work he shall remove all his waste materials and rubbish from and about the Project as well as his tools, construction equipment, machinery and surplus materials or to restore and repair and other damage created during construction.

The Contractor shall protect and prevent damage to all unfinished portions of the Work, including but not limited to the protection of the Work from damage by the climate, theft, or vandalism. The Contractor shall defend against all suits or claims for infringement of any patent rights and shall save the Owner harmless from loss on account thereof.

Contractor shall be responsible for taking all precautions necessary to protect the buildings, contents, customers, and occupants from damage or injury from the operation and from water, debris and dust from entering the buildings during performance of the Work.

The Owner shall be afforded access to all Contractor's records related to this Project, including, books, correspondence, instructions, drawings, receipts, vouchers, memoranda and similar data relating to this Contract, as kept by Contractor in the normal course of business, and the Contractor shall preserve all such records for a period of five years after the Final Payment. These documents and records shall be produced for inspection and copying by Contractor within ten (10) days from the date of Owner's written request.

In connection with any litigation arising out of this Contract, the prevailing party shall be entitled to recover from the other party said prevailing party's reasonable attorneys' fees and costs, including attorneys' fees and costs for any appellate proceedings. The exclusive jurisdiction and venue for all litigation shall be in a court of competent jurisdiction in Collier County, Florida.

The Contractor shall promptly correct any work rejected by the Owner as defective or as failing to conform to the Contract Documents whether observed before or after completion and whether or not fabricated, installed or completed. The provisions of this paragraph apply to work done by Subcontractors and Sub-Subcontractors as well as to work done by direct employees of the Contractor.

This Contract is binding upon the parties hereto, their successors and assigns and replaces any and all prior agreements or understandings between the parties hereto (whether written or oral) and cannot be modified except in a written document signed by Owner and Contractor.

This Contract is personal to Owner and cannot be assigned by the Contractor without written approval of Owner which consent shall not be unreasonably withheld.

Time is of the essence of this Contract. Where necessary to effectuate the intent of the parties, the agreements herein shall survive closing. The terms and conditions hereof shall bind and the benefits inure to the parties hereto and their respective heirs, devisees, personal representatives, successors and assigns. This Contract shall be construed under the laws of the State of Florida regardless of where executed by either party.

Any notice required or given pursuant to or in relation to the Contract Documents shall be sent certified or registered mail, postage prepaid, return receipt requested, hand deliver, facsimile transmission prior to 5:00 p.m. on the date of transmission (E.D.T. or E.S.T. as then applicable), or via overnight express courier service, as follows:

As to Owner: Joe D'Jamoos

With copies to: Paul Hinson

As to Contractor: Robert A. Parks, Executive Vice President

IN WITNESS WHEREOF, the parties hereto have executed this Addendum on this _____ day of _____, 2005.

Signed, sealed and delivered
In the presence of:

_____
Signature of Witness

Jennifer Kenon Vickry
Print Name of Witness

_____
Signature of Witness

ESTHER CRUSHKIWIAT
Print Name of Witness

(OWNER)

By _____
                    President

Attest _____
                    Secretary

_____
Signature of Witness

Darla Meredith
Print Name of Witness

_____
Signature of Witness

HAROLD OROZCO
Print Name of Witness

(CONTRACTOR)
Westwind Constructing, Inc.

By _____
                    President

Attest _____
                    Secretary

295474_1.DOC

"The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work. Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to (1) all employees performing the Work and other persons who may be affected thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. Contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority bearing on the safety of persons and property and their protection from damage, injury or loss. To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, any Sub-Subcontractor, any material or equipment supplier, anyone directly or indirectly employed by any of them. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this paragraph. In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in anyway by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property, resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or utilized by Contractor relating to the performance of Work as described in this Contract. This indemnification provision is incorporated by reference into the Contract Documents. The Contractor shall promptly remedy all damage or loss to any property caused in whole or in part by the Contractor, any Subcontractor, any Sub-Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The foregoing obligations of the Contractor are in addition to his other obligations under this Contract. This provision shall survive the termination or expiration of this Contract."

Signed, sealed and delivered
in the presence of: _____ (OWNER)

_____
Signature of Witness

Darla Meredith
Print Name of Witness

By _____
President

_____
Signature of Witness

ESTHER GLUSKIEWICZ
Print Name of Witness

Attest _____
Secretary

_____
Signature of Witness

Darla Meredith
Print Name of Witness

(CONTRACTOR) Westwind Contracting, Inc.

By _____
President

_____
Signature of Witness

Haroun Cobaxo
Print Name of Witness

Attest _____
Secretary

# ATKINSON, DINER, STONE, MANKUTA & PLOUCHA, P.A.

ATTORNEYS AT LAW
ONE FINANCIAL PLAZA
100 SOUTHEAST 3RD AVENUE
SUITE 1400
FT. LAUDERDALE, FL 33394
WWW.ATKINSON-DINER.COM

**SEAN P. SULLIVAN**
sps@atkinson-diner.com

| | |
|---|---|
| BROWARD: | (954) 925-5501 ext. 1321 |
| MIAMI-DADE: | (305) 944-1882 ext. 1321 |
| FAX: | (954) 920-2711 |

January 6, 2010

Coconut 41, LLC
9130 Corsea Del Fontana Way
Naples, FL 34109

RE:  **Matter No.:  0010.09372**
     **Our Client:  Westwind Contracting, Inc.**
     **Demand for amounts due and owing**

To Whom It May Concern:

This firm represents Westwind Contracting, Inc. regarding monies owed to Westwind under two contracts with Coconut 41. Westwind recently recorded a claim of lien in Lee County for the work performed on Coconut Road pursuant to one of those contracts. In addition, Westwind is also owed for site improvement work performed under the other contract with Coconut 41. Westwind has been prohibited from proceeding with work under the contracts for an extended period of time and it has become clear that Coconut 41 has abandoned the work under both contracts.

Westwind has previously billed Coconut 41 for work performed and retainage due, yet Coconut 41 has and continues to fail to pay Westwind. This failure to pay is unacceptable and Westwind will no longer tolerate such actions.

Therefore, consider this correspondence as a formal demand for payment of $336,675.38 plus interest on the unpaid payment requests from the contract dated August 15, 2006. This amount represents $141,121.06 retainage due and owing under the contract dated June 16, 2006, $167,003.26 in retainage due and owing from the contract dated August 15, 2006, and $28,551.06 in unpaid payment requests from the contract dated August 15, 2006.  The interest on the unpaid payment requests is $943.36 as of the date of this demand and will continue accruing at a per diem rate of $14.08.

Westwind has given this firm authority and requested that this firm utilize all legal means to collect monies due and owing to Westwind if you fail to remit $336,675.38 plus the applicable interest to Atkinson, Diner, Stone, Mankuta & Ploucha, P.A. Trust Account at



the address listed above prior to 5 PM on January 18, 2010. These means include but are not limited to filing suit on its behalf to foreclose on the claim of lien, to bring an action for lost profits on contracted work which Westwind has not been allowed to complete, and to bring actions for other damages related to these contracts.

Sincerely,

Sean P. Sullivan, Esq.

cc:    Jeffrey C. Shannon, Esq.
      HG Coconut, LLC
      Orion Bank
      Federal Deposit Insurance Corporation
      Florida Community Bank
      Adele I. Stone, Esq.
      Westwind Contracting, Inc.

551353_1

**BBLS**
**SURVEYORS & MAPPERS INC.**
1502-A RAILHEAD BLVD.
NAPLES, FLORIDA 34110
TELEPHONE: 239-597-1315
FAX: (239) 597-5207

**LEGAL DESCRIPTION**
**14.41 ACRE PARCEL**

A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE WEST QUARTER CORNER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE RUN N.01°00'32"W, ALONG THE WEST LINE OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 55.00 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 50.00 FOOT RIGHT-OF-WAY, AS THE SAME IS DESCRIBED IN O.R. BOOK 1738 AT PAGE 2538 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN S.89°56'40"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, FOR A DISTANCE OF 1900.67 FEET TO A POINT ON THE EASTERLY BOUNDARY OF A 100.00 FOOT WIDE FLORIDA POWER AND LIGHT COMPANY EASEMENT, AS RECORDED IN OFFICIAL RECORDS BOOK 2304 AT PAGE 2655 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA, AND THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED;THENCE RUN N.21°14'38"W. ALONG THE EASTERLY BOUNDARY OF SAID FLORIDA POWER AND LIGHT COMPANY EASEMENT, FOR A DISTANCE OF 1,399.06 FEET TO A POINT ON THE NORTH LINE OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SAID SECTION 9; THENCE RUN N.88°20'48"E. ALONG THE NORTH LINE OF SOUTH ½ OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 156.27 FEET; THENCE RUN S.01°39'12"E., FOR A DISTANCE OF 170.00 FEET; THENCE N.88°20'48"E., FOR A DISTANCE OF 690.29 FEET; THENCE RUN S.00°03'21"W., FOR A DISTANCE OF 868.82 FEET; THENCE RUN N.89°56'39"W., FOR A DISTANCE OF 150.73 FEET; THENCE RUN S.00°00'28"W., FOR A DISTANCE OF 290.01 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD; THENCE RUN N.89°56'40"W. ALONG SAID NORTHERLY RIGHT-OF-WAY LINE, FOR A DISTANCE OF 192.57 FEET TO THE POINT OF BEGINNING.

BEARINGS REFER TO THE EAST LINE OF THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, AS BEING N.01°22'14"W.

SHEET 1 OF 3

EXHIBIT
E

THIS PROPERTY IS SUBJECT TO EASEMENTS, RESTRICTIONS AND
RESERVATIONS OF RECORD.

07/27/05

STEVE B. BERRY, STATE OF FLORIDA, (P.S.M.. #5296)
BERRY SURVEYORS & MAPPERS INC., (L.B. #6753)

Z:\PROJECTS\SIS\SURVEYS\4A2PARCELL.lwp

PROOFED BY SBR

SEE ATTACHED SKETCH
(SHEET 3 OF 3)



SKETCH TO ACCOMPANY LEGAL DESCRIPTION

"THIS IS NOT A SURVEY"
SHEET 3 OF 3


LEGAL DESCRIPTION:

A PARCEL OF LAND LOCATED IN A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHEAST CORNER OF TRACT 'D', COCONUT SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 65, AT PAGES 29 THROUGH 31 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA, THE SAME BEING A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 60 FOOT WIDE RIGHT-OF-WAY; THENCE RUN N.89°57'23"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF SAID COCONUT ROAD FOR A DISTANCE OF 192.74 FEET; THENCE RUN N.00°08'29"W., FOR A DISTANCE OF 25.00 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE CONTINUE N.00°08'29"W., FOR A DISTANCE OF 285.00 FEET; THENCE RUN N.89°57'23"E., FOR A DISTANCE OF 150.73 FEET; THENCE RUN N.00°02'36"W., FOR A DISTANCE OF 853.35 FEET; THENCE RUN 8.88°14'51"W., FOR A DISTANCE OF 690.29 FEET; THENCE RUN N.01°45'09"W., FOR A DISTANCE OF 169.93 FEET TO A POINT ON THE NORTH LINE OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE RUN N.88°15'44"E., ALONG THE NORTH LINE OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 1,078.97 FEET TO THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 9; THENCE RUN N.88°23'00"E., ALONG THE NORTH LINE OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 517.07 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF U.S. HIGHWAY 41 (STATE ROAD 45), A 200.00 FOOT WIDE RIGHT-OF-WAY, THE SAME BEING A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.88°47'55"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 00°21'50", SUBTENDED BY A CHORD OF 72.38 FEET, AT A BEARING OF 8.03°01'10"E., FOR A DISTANCE OF 72.38 FEET TO THE END OF SAID CURVE; THENCE RUN S.88°23'00"W., FOR A DISTANCE OF 224.54 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE, CONCAVE SOUTHEASTERLY; THENCE RUN SOUTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, HAVING A RADIUS OF 25.00 FEET, THROUGH A CENTRAL ANGLE OF 91°07'02", SUBTENDED BY A CHORD OF 35.70 FEET, AT A BEARING OF S.42°49'29"W., FOR A DISTANCE OF 39.76 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE WESTERLY; THENCE RUN SOUTHERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,141.16 FEET THROUGH A CENTRAL ANGLE OF 00°57'05", SUBTENDED BY A CHORD OF 185.00 FEET, AT A BEARING OF S.02°16'26"E., FOR A DISTANCE OF 185.01 FEET TO THE END OF SAID CURVE; THENCE RUN N.88°13'03"E., FOR A DISTANCE OF 250.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41, THE SAME BEING A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.88°13'03"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 01°08'45", SUBTENDED BY A CHORD OF 227.79 FEET, AT A BEARING OF S.01°12'34"E., FOR A DISTANCE OF 227.79 FEET TO THE END OF SAID CURVE; THENCE RUN S.89°21'48"W., FOR A DISTANCE OF 250.00 FEET, TO A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.89°21'48"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE ARC OF SAID



EXHIBIT

tabbies

F

CURVE TO THE RIGHT, HAVING A RADIUS OF 11,141.16 FEET; THROUGH A CENTRAL ANGLE OF 00°22'23", SUBTENDED BY A CHORD OF 72.86 FEET AT A BEARING OF S.00°27'00"E., FOR A DISTANCE OF 72.86 FEET TO THE END OF SAID CURVE; THENCE RUN S.00°15'47"E., FOR A DISTANCE OF 80.27 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE CONCAVE NORTHEASTERLY; THENCE RUN SOUTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT; HAVING A RADIUS OF 30.00 FEET, THROUGH A CENTRAL ANGLE OF 90°00'00", SUBTENDED BY A CHORD OF 42.43 FEET AT A BEARING OF S.45°15'47"E., FOR A DISTANCE OF 47.12 FEET TO THE END OF SAID CURVE; THENCE RUN N.89°44'13"E., FOR A DISTANCE OF 220.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41; THENCE RUN S.00°15'47"E., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 FOR A DISTANCE OF 684.82 FEET; THENCE RUN S.89°57'23"W., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF SAID COCONUT ROAD FOR A DISTANCE OF 1,071.00 FEET TO THE POINT OF BEGINNING; CONTAINING 29.087 ACRES, MORE OR LESS.

THIS PROPERTY SUBJECT TO EASEMENTS, RESERVATIONS OR RESTRICTIONS OF RECORD.

BEARINGS SHOWN HEREON REFER TO NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 80.00 FOOT WIDE RIGHT-OF-WAY, LEE COUNTY, FLORIDA, AS BEING S.89°57'23" W.

HOLE MONTES, INC.
CERTIFICATE OF AUTHORIZATION LB # 1772

BY: _____  P.S.M. #6605
RALPH W. GROMLEY        STATE OF FLORIDA

## ORION BANK PARCEL

A PARCEL OF LAND LOCATED IN A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHEAST CORNER OF TRACT 'D', COCONUT SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK, 65, PAGES 29 THROUGH 31 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN N.89°57'23"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, HAVING A 50.00 FOOT WIDE RIGHT-OF-WAY, FOR A DISTANCE OF 1,264.72 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF U.S. 41, STATE ROAD 45, HAVING A 200.00 FOOT WIDE RIGHT-OF-WAY; THENCE RUN N.00°15'47"W., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, FOR A DISTANCE OF 659.62 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE RUN S.89°44'13"W., FOR A DISTANCE OF 220.00 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE, CONCAVE NORTHEASTERLY; THENCE RUN NORTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 30.00 FEET, THROUGH A CENTRAL ANGLE OF 90°00'00", SUBTENDED BY A CHORD OF 42.43 FEET AT A BEARING OF N.45°15'47"W., FOR A DISTANCE OF 47.12 FEET TO THE END OF SAID CURVE; THENCE RUN N.00°15'47"W., FOR A DISTANCE OF 80.27 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE, CONCAVE WESTERLY; THENCE RUN NORTHERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, HAVING A RADIUS OF 11,141.16 FEET, THROUGH A CENTRAL ANGLE OF 00°22'25", SUBTENDED BY A CHORD OF 72.65 FEET AT A BEARING OF N.00°27'00"W., FOR A DISTANCE OF 72.65 FEET TO THE END OF SAID CURVE; THENCE RUN N.89°21'48"E., FOR A DISTANCE OF 250.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, THE SAME BEING A POINT ON A CIRCULAR CURVE, CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.89°21'48"W., A DISTANCE OF 11,391.16 FEET THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 00°22'25", SUBTENDED BY A CHORD OF 74.28 FEET AT A BEARING OF S.00°27'00"E., FOR A DISTANCE OF 74.29 FEET TO THE END OF SAID CURVE; THENCE RUN S.00°15'47"E., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, FOR A DISTANCE OF 110.27 FEET TO THE POINT OF BEGINNING; CONTAINING 1.050 ACRES, MORE OR LESS.



EXHIBIT
G

## FLORIDA COMMUNITY BANK PARCEL

A PARCEL OF LAND LOCATED IN SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHEAST CORNER OF TRACT "D", COCONUT SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 65, AT PAGES 29 THROUGH 31 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN N.21°10'35"W., ALONG THE EASTERLY LINE OF SAID TRACT "D", FOR A DISTANCE OF 1398.36 FEET TO THE SOUTHWEST CORNER OF TRACT "T", MARSH LANDING, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 58 AT PAGES 42 THROUGH 49 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN N.88°15'44"E., FOR A DISTANCE OF 1236.24 FEET, TO THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE RUN N.88°23'00"E., FOR A DISTANCE OF 517.07 FEET, TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF U.S. HIGHWAY 41 (STATE ROAD 45), A 200 FOOT WIDE RIGHT-OF-WAY, THE SAME BEING A POINT ON A CIRCULAR CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.86°47'55"W., A DISTANCE OF 11,391.16 FEET THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 00°21'50", SUBTENDED BY A CHORD OF 72.36 FEET AT A BEARING OF S.03°01'10"E., FOR A DISTANCE OF 72.36 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE CONTINUE ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 01°03'18", SUBTENDED BY A CHORD OF 209.77 FEET AT A BEARING OF S.02°18'36"E., FOR A DISTANCE OF 209.77 FEET TO THE END OF SAID CURVE; THENCE RUN S.88°13'03"W, FOR A DISTANCE OF 250.00 FEET TO A POINT ON A CIRCULAR CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.88°13'03"W A DISTANCE OF 11,141.16 FEET THEREFROM; THENCE RUN NORTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, HAVING A RADIUS OF 11,141.16 FEET, THROUGH A CENTRAL ANGLE OF 00°57'05", SUBTENDED BY A CHORD OF 185.00 FEET AT A BEARING OF N.02°15'29"W., FOR A DISTANCE OF 185.01 FEET TO A POINT OF REVERSE CURVE, CONCAVE SOUTHEASTERLY; THENCE RUN NORTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 25.00 FEET THROUGH A CENTRAL ANGLE OF 91°07'02", SUBTENDED BY A CHORD OF 35.70 FEET AT A BEARING OF N.42°49'29"E., FOR A DISTANCE OF 39.76 FEET TO THE END OF SAID CURVE; THENCE RUN N.88°23'00"E., FOR A DISTANCE OF 224.54 FEET TO THE POINT OF BEGINNING; CONTAINING 1.203 ACRES, MORE OR LESS.



EXHIBIT

H

tabbies

Prepared By & Return to:
Sean P. Sullivan, Esq.
Atkinson, Diner, Stone, Mankuta
& Ploucha, P.A.
100 S.E. 3rd Avenue, Suite 1400
Ft. Lauderdale, FL 33394

INSTR # 2009000339207, Pages 8
Doc Type LI, Recorded 12/22/2009 at 02:33 PM,
Charlie Green, Lee County Clerk of Circuit Court
Rec. Fee $69.50
Deputy Clerk JMILLER
#1

## WARNING!

THIS LEGAL DOCUMENT REFLECTS THAT A CONSTRUCTION LIEN HAS BEEN PLACED ON THE REAL PROPERTY LISTED HEREIN. UNLESS THE OWNER OF SUCH PROPERTY TAKES ACTION TO SHORTEN THE TIME PERIOD, THIS LIEN MAY REMAIN VALID FOR ONE YEAR FROM THE DATE OF RECORDING, AND SHALL EXPIRE AND BECOME NULL AND VOID THEREAFTER UNLESS LEGAL PROCEEDINGS HAVE BEEN COMMENCED TO FORECLOSE OR TO DISCHARGE THIS LIEN.

## CLAIM OF LIEN

State of Florida )

County of Lee )

BEFORE ME, the undersigned notary public, personally appeared, **Robert A. Parks, III**, who was duly sworn and says that he is **Executive Vice President**, for **WESTWIND CONTRACTING, INC.** whose address is 3501 West Hallandale Beach Blvd., Pembroke Park, Florida 33023; and that in accordance with a contract dated August 15, 2006 with Coconut 41, LLC partially entitled "Coconut Road Widening," lienor furnished labor, services, and materials consisting of improvements to Coconut Road for the benefit of the following described real property in Lee County, Florida:

**For the legal descriptions of the parcels see Exhibits "A", "B", "C", and "D" attached hereto and incorporated herein**

owned by: Coconut 41, LLC; HG Coconut, LLC; Orion Bank; and Florida Community Bank of a total value of $1,893,022.15, of which there remains unpaid $195,554.32, and furnished the first of the items on February 18, 2008, and the last of the items on September 28, 2009.

**WESTWIND CONTRACTING, INC.**

By: Robert A. Parks, III

SWORN TO AND SUBSCRIBED before me this 22nd day of December 2009 by Robert A. Parks, III, who is Personally Known ✓ OR Produced Identification _____ Type of Identification Produced_____.

Notary Public

My commission expires
1-14-2011
549871_1



JEAN H. SPARROW
Notary Public - State of Florida
My Commission Expires Jan 14, 2011
Commission # DD 585408

EXHIBIT



950 Encore Way • Naples, Florida 34110 • Phone: 239.254.2000 • Fax: 239.254.2075

HM PROJECT #2005.086X
12/5/2008
REF. DWG. #B-6340

LEGAL DESCRIPTION:

A PARCEL OF LAND LOCATED IN A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHEAST CORNER OF TRACT 'D', COCONUT SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 85, AT PAGES 29 THROUGH 31 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA, THE SAME BEING A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 50 FOOT WIDE RIGHT-OF-WAY; THENCE RUN N.89°57'25"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF SAID COCONUT ROAD FOR A DISTANCE OF 192.74 FEET; THENCE RUN N.00°03'28"W., FOR A DISTANCE OF 25.00 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE CONTINUE N.00°03'28"W., FOR A DISTANCE OF 285.00 FEET; THENCE RUN N.89°57'23"E., FOR A DISTANCE OF 150.73 FEET; THENCE RUN N.00°02'36"W., FOR A DISTANCE OF 888.36 FEET; THENCE RUN S.89°14'51"W., FOR A DISTANCE OF 690.29 FEET; THENCE RUN N.01°46'09"W., FOR A DISTANCE OF 169.99 FEET TO A POINT ON THE NORTH LINE OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE RUN N.88°15'44"E., ALONG THE NORTH LINE OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 1,079.97 FEET TO THE NORTHEAST CORNER OF THE SOUTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 9; THENCE RUN N.88°23'00"E., ALONG THE NORTH LINE OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 517.07 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF U.S. HIGHWAY 41 (STATE ROAD 45), A 200.00 FOOT WIDE RIGHT-OF-WAY, THE SAME BEING A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.88°47'55"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,581.16 FEET, THROUGH A CENTRAL ANGLE OF 00°21'50", SUBTENDED BY A CHORD OF 72.36 FEET, AT A BEARING OF S.03°01'10"E., FOR A DISTANCE OF 72.36 FEET TO THE END OF SAID CURVE; THENCE RUN S.88°23'00"W., FOR A DISTANCE OF 224.54 FEET TO THE BEGINNING OF A TANGENTIAL, CIRCULAR CURVE, CONCAVE SOUTHEASTERLY; THENCE RUN SOUTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, HAVING A RADIUS OF 25.00 FEET, THROUGH A CENTRAL ANGLE OF 91°07'02", SUBTENDED BY A CHORD OF 35.70 FEET, AT A BEARING OF S.42°49'29"W., FOR A DISTANCE OF 39.76 FEET TO THE BEGINNING OF A REVERSE CURVE CONCAVE WESTERLY; THENCE RUN SOUTHERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,141.16 FEET THROUGH A CENTRAL ANGLE OF 00°57'05", SUBTENDED BY A CHORD OF 185.00 FEET, AT A BEARING OF S.02°15'29"E., FOR A DISTANCE OF 185.01 FEET TO THE END OF SAID CURVE; THENCE RUN N.88°13'03"E., FOR A DISTANCE OF 250.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41, THE SAME BEING A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.88°13'03"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 01°08'45", SUBTENDED BY A CHORD OF 227.76 FEET, AT A BEARING OF S.01°12'34"E., FOR A DISTANCE OF 227.76 FEET TO THE END OF SAID CURVE; THENCE RUN S.89°21'48"W., FOR A DISTANCE OF 250.00 FEET, TO A POINT ON A CURVE CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.89°21'48"W. THEREFROM; THENCE RUN SOUTHERLY ALONG THE ARC OF SAID

W:\2005\2005086X\WP\Legal For b-6340.doc


EXHIBIT
"A"

CURVE TO THE RIGHT, HAVING A RADIUS OF 11,141.16 FEET; THROUGH A CENTRAL ANGLE OF 00°22'25", SUBTENDED BY A CHORD OF 72.65 FEET AT A BEARING OF S.03°27'00"E., FOR A DISTANCE OF 72.65 FEET TO THE END OF SAID CURVE; THENCE RUN S.03°15'47"E., FOR A DISTANCE OF 80.27 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE CONCAVE NORTHEASTERLY; THENCE RUN SOUTHEASTERLY ALONG THE ARC OF SAID CURVE TO THE LEFT; HAVING A RADIUS OF 30.00 FEET, THROUGH A CENTRAL ANGLE OF 90°00'00", SUBTENDED BY A CHORD OF 42.43 FEET AT A BEARING OF S.45°15'47"E., FOR A DISTANCE OF 47.12 FEET TO THE END OF SAID CURVE; THENCE RUN N.89°44'13"E., FOR A DISTANCE OF 220.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41; THENCE RUN S.00°15'47"E., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. HIGHWAY 41 FOR A DISTANCE OF 634.82 FEET; THENCE RUN S.89°57'23"W., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF SAID COCONUT ROAD FOR A DISTANCE OF 1,071.90 FEET TO THE POINT OF BEGINNING; CONTAINING 20.067 ACRES, MORE OR LESS.

THIS PROPERTY SUBJECT TO EASEMENTS, RESERVATIONS OR RESTRICTIONS OF RECORD.

BEARINGS SHOWN HEREON REFER TO NORTHERLY RIGHT-OFWAY LINE OF COCONUT ROAD, A 50.00 FOOT WIDE RIGHT-OF-WAY, LEE COUNTY, FLORIDA, AS BEING S.89°57'23" W.

HOLE MONTES, INC.
CERTIFICATE OF AUTHORIZATION LB # 1772

BY: _____        P.S.M. #6606
RALPH W. GROMLEY              STATE OF FLORIDA

**BBLS**
**SURVEYORS & MAPPERS INC.**
1502-A RAILHEAD BLVD.
NAPLES, FLORIDA 34110
TELEPHONE: 239-597-1315
FAX: (239) 597-5207

**LEGAL DESCRIPTION**
**14.41 ACRE PARCEL**

A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE WEST QUARTER CORNER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA; THENCE RUN N.01°00'32"W. ALONG THE WEST LINE OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 55.00 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, A 50.00 FOOT RIGHT-OF-WAY, AS THE SAME IS DESCRIBED IN O.R. BOOK 1738 AT PAGE 2538 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN S.89°56'40"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, FOR A DISTANCE OF 1900.67 FEET TO A POINT ON THE EASTERLY BOUNDARY OF A 100.00 FOOT WIDE FLORIDA POWER AND LIGHT COMPANY EASEMENT, AS RECORDED IN OFFICIAL RECORDS BOOK 2304 AT PAGE 2655 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA, AND THE **POINT OF BEGINNING** OF THE PARCEL OF LAND HEREIN DESCRIBED;THENCE RUN N.21°14'38"W. ALONG THE EASTERLY BOUNDARY OF SAID FLORIDA POWER AND LIGHT COMPANY EASEMENT, FOR A DISTANCE OF 1,399.06 FEET TO A POINT ON THE NORTH LINE OF THE SOUTH ½ OF THE NORTHWEST ¼ OF SAID SECTION 9; THENCE RUN N.88°20'48"E. ALONG THE NORTH LINE OF SOUTH ½ OF THE NORTHWEST QUARTER OF SAID SECTION 9, FOR A DISTANCE OF 156.27 FEET; THENCE RUN S.01°39'12"E., FOR A DISTANCE OF 170.00 FEET; THENCE N.88°20'48"E., FOR A DISTANCE OF 690.29 FEET; THENCE RUN S.00°03'21"W., FOR A DISTANCE OF 868.82 FEET; THENCE RUN N.89°56'39"W., FOR A DISTANCE OF 150.73 FEET; THENCE RUN S.00°00'28"W., FOR A DISTANCE OF 290.01 FEET TO A POINT ON THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD; THENCE RUN N.89°56'40"W. ALONG SAID NORTHERLY RIGHT-OF-WAY LINE, FOR A DISTANCE OF 192.57 FEET TO THE **POINT OF BEGINNING.**

BEARINGS REFER TO THE EAST LINE OF THE NORTHWEST QUARTER OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, AS BEING N.01°22'14"W.



EXHIBIT
"B"

THIS PROPERTY IS SUBJECT TO EASEMENTS, RESTRICTIONS AND
RESERVATIONS OF RECORD.

_____ 07/27/05
STEVE E. BERRY, STATE OF FLORIDA, (P.S.M.. #5296)
BEES SURVEYORS & MAPPERS INC., (L.B. #6753)

Z:\PROJECTUS15\SURVEY\1474CPARCELL.lwp

PROOFED BY: _____

SEE ATTACHED SKETCH
(SHEET 3 OF 3)

SHEET 2 OF 3



SKETCH TO ACCOMPANY LEGAL DESCRIPTION

"THIS IS NOT A SURVEY"
SHEET 3 OF 3

## ORION BANK PARCEL

A PARCEL OF LAND LOCATED IN A PORTION OF SECTION 9, TOWNSHIP 47 SOUTH, RANGE 25 EAST, LEE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE SOUTHEAST CORNER OF TRACT 'D', COCONUT SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK. 65, PAGES 29 THROUGH 31 OF THE PUBLIC RECORDS OF LEE COUNTY, FLORIDA; THENCE RUN N.89°57'23"E., ALONG THE NORTHERLY RIGHT-OF-WAY LINE OF COCONUT ROAD, HAVING A 50.00 FOOT WIDE RIGHT-OF-WAY, FOR A DISTANCE OF 1,264.72 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF U.S. 41, STATE ROAD 45, HAVING A 200.00 FOOT WIDE RIGHT-OF-WAY; THENCE RUN N.00°15'47"W., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, FOR A DISTANCE OF 659.62 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND HEREIN DESCRIBED; THENCE RUN S.89°44'13"W., FOR A DISTANCE OF 220.00 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE, CONCAVE NORTHEASTERLY; THENCE RUN NORTHWESTERLY ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 30.00 FEET, THROUGH A CENTRAL ANGLE OF 90°00'00", SUBTENDED BY A CHORD OF 42.43 FEET AT A BEARING OF N.45°15'47"W., FOR A DISTANCE OF 47.12 FEET TO THE END OF SAID CURVE; THENCE RUN N.00°15'47"W., FOR A DISTANCE OF 89.27 FEET TO THE BEGINNING OF A TANGENTIAL CIRCULAR CURVE, CONCAVE WESTERLY; THENCE RUN NORTHERLY ALONG THE ARC OF SAID CURVE TO THE LEFT, HAVING A RADIUS OF 11,141.16 FEET, THROUGH A CENTRAL ANGLE OF 00°22'25", SUBTENDED BY A CHORD OF 72.65 FEET AT A BEARING OF N.00°27'00"W., FOR A DISTANCE OF 72.65 FEET TO THE END OF SAID CURVE; THENCE RUN N.89°21'48"E., FOR A DISTANCE OF 250.00 FEET TO A POINT ON THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, THE SAME BEING A POINT ON A CIRCULAR CURVE, CONCAVE WESTERLY, WHOSE RADIUS POINT BEARS S.89°21'48"W., A DISTANCE OF 11,391.16 FEET THEREFROM; THENCE RUN SOUTHERLY ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41 AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, HAVING A RADIUS OF 11,391.16 FEET, THROUGH A CENTRAL ANGLE OF 00°22'25", SUBTENDED BY A CHORD OF 74.28 FEET AT A BEARING OF S.00°27'00"E., FOR A DISTANCE OF 74.29 FEET TO THE END OF SAID CURVE; THENCE RUN S.00°15'47"E., ALONG THE WESTERLY RIGHT-OF-WAY LINE OF SAID U.S. 41, FOR A DISTANCE OF 110.27 FEET TO THE POINT OF BEGINNING; CONTAINING 1,050 ACRES, MORE OR LESS.

