```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

IBERIABANK, a Louisiana banking corporation, as successor in interest to Orion Bank,

            Plaintiff,

vs.                             Case No. 2:11-cv-321-FtM-29DNF

COCONUT 41, LLC, a Florida limited liability company, THE D'JAMOOS GROUP, LTD, a Florida limited liability company, D'JAMOOS HOLDINGS, INC., a Florida corporation, JOSEPH D'JAMOOS, an individual and trustee of the Joseph E. D'Jamoos Second Amended and Restated Revocable Trust Agreement U/AD May 20, 2003, AJAX PAVING INDUSTRIES, INC., a Michigan corporation, WESTWIND CONTRACTING, INC., a Florida corporation, and HOLE MONTES, INC.,

            Defendants.
_____

WESTWIND CONTRACTING, INC.,

        Counter-Plaintiff/
        Crossclaim Plaintiff/
        Third-party Plaintiff,

vs.

IBERIABANK, COCONUT 41, LLC, AJAX PAVING, INC., HOLE MONTES, INC., HG COCONUT, LLC, and FEDERAL INSURANCE CORPORATION, as Receiver of Florida Community Bank,

        Counter-Defendants/
        Crossclaim Defendants/
        Third-party Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Counter-Defendant FDIC-R's Motion to Dismiss Second Amended Counterclaim and Cross-Claim of Counter-Plaintiff Westwind Contracting, Inc. (Doc. #21), filed on June 23, 2011. The Federal Deposit Insurance Corporation, as receiver for Florida Community Bank (FDIC-R), argues that Westwind Contracting, Inc. (Westwind) failed to file an administrative claim with the FDIC-R within the statutory time frame, its claims against the FDIC-R are now time-barred, and the Second Amended Counterclaim and Cross-Claim (Doc. #5) must be dismissed as it relates to the FDIC-R for lack of subject matter jurisdiction. Additionally, the FDIC-R argues that Westwind cannot recover as a matter of law because there is no agreement which meets the statutory requirements as to the FDIC-R. Westwind filed a Response (Doc. #39) on July 7, 2011, disputing these assertions.

**I.**

The issue of the failure to exhaust administrative remedies, and the consequent lack of subject matter jurisdiction, requires a brief chronology. While the FDIC-R has filed the state court record in dribs and drabs, the following appears to be a reasonable chronology:

On January 27, 2010, an Order Appointing Receiver of Florida Community Bank was signed by the Commissioner of the Florida Office of Financial Regulation. (Doc. #1, 12/6/2010 Motion, Exh. A).

This Order appointed the FDIC as Receiver for Florida Community Bank, effective January 29, 2010. An Order Confirming Appointment of the Federal Deposit Insurance Corporation As Receiver of Florida Community Bank (Id., Exh. B, No. 10-659-CA) was signed by a state circuit court judge on January 29, 2010. As such, by operation of law FDIC-R succeeded to "all rights, titles, powers, and privileges . . . and the assets of . . ." of Florida Community Bank as of January 29, 2010. 12 U.S.C. § 1821(d)(2)(A).

On January 28, 2010, Iberiabank, as successor of Orion Bank, filed a Verified Complaint (Doc. #2) against Coconut 41, LLC and six other defendants in a state circuit court action seeking damages, foreclosure of a mortgage on certain real property in Lee County, Florida which secured a $17.88 million Promissory Note, foreclosure of a security interest and collateral assignments, replevin, and damages from guarantors (the Foreclosure Complaint). A Notice of Lis Pendens was also filed. Westwind was named as a defendant because it might claim an interest in the real property. Florida Community Bank was not named as a party in the Foreclosure Complaint.

On March 17, 2010, Westwind filed an Answer, Affirmative Defenses, Counterclaim and Counterclaim [sic] (Doc. #4). In the "Counterclaim, Cross-Claims, and Third Party Complaints" portion, Westwind sued six defendants, including Florida Community Bank. As to Florida Community Bank, Westwind sought to enforce a $195,554.32

Claim of Lien (Doc. #5, p. 57, Exh. I) recorded on December 22, 2009, encumbering the real property (Count III), and recover approximately $336,675.38 under an unjust enrichment claim as the reasonable value of services it performed which benefitted Florida Community Bank and other defendants (Count IV).  A Notice of Lis Pendens was also recorded on March 19, 2010.  (Doc. #77.)

On April 8, 2010, Westwind served a Third Party Summons upon Florida Community Bank in connection with the Counterclaim, Cross-Claims, and Third Party Complaint.  (Doc. #87.)  Service was made on the bank's Vice President Greg Goins.  (Id.)  No service was attempted or made on the FDIC-R itself.  On June 14, 2010, a state circuit court judge dismissed the Counterclaim on the motion of Coconut 41, LLC, with leave to amend.  (Doc. #82.)

On July 9, 2010, Westwind filed a nine-count Amended Counterclaim and Cross Claim against various parties, including Florida Community Bank.  (Doc. #97-1.)  As to Florida Community Bank, Count III sought to enforce the construction lien and Count VII sought damages for unjust enrichment.  The FDIC-R was not named as a party.  The Certificate of Service shows service on several law firms, but does not indicate how service was made on Florida Community Bank.

On September 17, 2010, the FDIC-R filed a Motion to Dismiss the Amended Counterclaim and Cross-Claim Filed by Westwind Contracting, Inc. (Doc. #9) through the law firm Porter, Wright,

Morris & Arthur, LLP.  The motion to dismiss was not based on the failure to name and serve the FDIC-R, but for failure to state a cause of action, failure to allege ultimate facts, and improperly alleging claims outside the boundaries of Rule 1.170(h) of the Florida Rules of Civil Procedure.[1]

On December 6, 2010, the FDIC filed a Motion to Dismiss Third-Party Complaint and/or Quash Third-Party Summons for Insufficiency of Process and Insufficiency of Service and Motion to Discharge Notice of Lis Pendens (Doc. #104) in the state court proceeding. This motion asserted that the FDIC-R was the proper party, and that the Third Party Complaint must be dismissed for failure to name FDIC-R as the party and failure to serve the FDIC-R.  No argument was made regarding the failure to exhaust administrative remedies. On April 4, 2011, a state circuit court judge entered an Order (Doc. #104, p. 26) granting this motion, finding that "the proceeding was never properly filed against the FDIC and the FDIC was never properly substituted as a party in this action."  (Id., p. 27.)  Westwind was given 20 days in which to name the FDIC as a party and to perfect service of process.  The Motion to Discharge Notice of Lis Pendens was denied as moot.  (Id.)

On April 25, 2011, Westwind filed a Second Amended Counterclaim and Cross-Claim (Doc. #5) in the state court

---

[1]On April 4, 2011, the FDIC-R filed a notice withdrawing this motion.  (Doc. #1, 04/04/2011 Notice.)

proceeding, naming the FDIC-R as a Counter-Defendant. Westwind alleged that it made certain improvements to Coconut 41's property which also benefitted the real property now owned by the FDIC-R. As to the FDIC-R, Westwind asserted a claim to enforce the construction lien (Count III) and a claim for unjust enrichment (Count VII). Counsel for the FDIC-R agreed to accept service of process, which was delivered on April 27, 2011. This is the operative pleading in the case.

On June 1, 2011, the FDIC-R filed a Notice of Removal of the case to federal court pursuant to 28 U.S.C. § 1819. (Doc. #1.) The FDIC-R now files a motion to dismiss for lack of subject matter jurisdiction and, alternatively, for failure to state a claim.

**II.**

The Financial Institution Reform, Recovery, and Enforcement Act (FIRREA) established a comprehensive claims review process for claims against the assets of failed financial institutions held by the FDIC as Receiver. This claims review process "enables the FDIC [ ] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . without unduly burdening the District Courts." Damiano v. FDIC, 104 F.3d 328, 334, n.10 (11th Cir. 1997)(quoting H.R. Rep. No. 101-54(I), at 418-19 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215); FDIC v. LaCentra Trucking, Inc., 157 F.3d 1292, 1299 (11th Cir. 1998)(same). To oversimplify, FIRREA requires the FDIC to give

notice to the failed bank's creditors to file claims against the bank, § 1821(d)(3)(b), and authorizes the FDIC to receive and then disallow or allow and pay such claims, § 1821(d)(5), (10).

**A.**

For claims handled administratively, the FDIC-R is required to determine the claims in accordance with the statutory and regulatory requirements of the claims review process. 12 U.S.C. § 1821(d)(3)(A). Under this review process, the FDIC must first publish a notice "to the depository institution's creditors" to present their claims by a specified date not less than 90 days after publication of the notice, 12 U.S.C. § 1821(d)(3)(B)(i), and must republish the notice twice at monthly intervals, 12 U.S.C. § 1821(d)(3)(B)(ii). The FDIC must also mail a similar notice to "any creditor shown on the institution's books" at the creditor's last address listed in the books, 12 U.S.C. § 1821(d)(3)(C)(i), and "upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address," 12 U.S.C. § 1821(d)(3)(C)(ii).

Unless extended by a written agreement, the FDIC has 180 days after a claim is filed to allow or disallow it and notify the claimant of the determination. 12 U.S.C. § 1821(d)(5)(A)(i), (ii). A person whose claim is disallowed, or whose claim is not decided within the 180 day period, may pursue administrative remedies or file a civil action in an appropriate federal district court. 12

U.S.C. § 1821(d)(6)(A). Claims not timely filed "shall be disallowed, and such disallowance shall be final", 12 U.S.C. § 1821(d)(5)(C)(i), unless "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date" and "such claim is filed in time to permit payment of such claim," 12 U.S.C. § 1821(d)(5)(C)(ii).

Except as provided in the statute, "no court shall have jurisdiction over -- (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver; . . . or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D)(i), (ii). This broad bar applies to claims and actions by debtors, creditors, and others, Tri-State Hotels, Inc. v. FDIC 79 F.3d 707, 713-15 (8th Cir. 1996), as well as lienors, LaCentra Trucking, 157 F.3d at 1299 n.6, which may be characterized as "(1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed Receiver; (2) actions for payment from assets of such depository institutions; (3) actions seeking a determination of rights with respect to the assets of such depository institutions; and (4) a claim relating to any act or omission of such institution or the [FDIC] as receiver." Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 (11th Cir. 1999)(quoting Nat'l Union Fire Ins. Co. v. City Sav.,

F.S.B., 28 F.3d 376, 393 (3d Cir. 1994)). Thus, "[u]nder FIRREA, federal courts generally lack the authority to decide claims against an institution in federal receivership until the claimant has exhausted his administrative remedies against the FDIC." Aquilar v. FDIC, 63 F.3d 1059, 1061 (11th Cir. 1995)(citation omitted).

**B.**

The essential question before the Court is whether § 1821(d)(13)(D) applies to and bars the claims brought by Westwind against the FDIC-R. It is clear that the two claims set forth against the FDIC-R fall within the scope of § 1821(d)(13)(D). It is also not disputed that Westwind has not filed an administrative claim with the FDIC. Therefore, unless something takes this case out of the norm, the general rule is that the district court lacks the authority to decide the claims.

Westwind asserts that the FDIC-R's motion must be denied because Westwind never received notice that the FDIC had been appointed receiver for Florida Community Bank. Without such notice, it argues, it was not required to exhaust administrative remedies.

The Foreclosure Complaint of Iberiabank was filed one day prior to January 29, 2010, the effective date of the FDIC's appointment as receiver, but Florida Community Bank was not a named party in the Foreclosure Complaint. Therefore, nothing in the

Foreclosure Complaint caused Westwind to be a creditor or claimant of the Florida Community Bank. There is no suggestion that Westwind was otherwise a creditor on the books of Florida Community Bank at the time the FDIC began its receivership. Accordingly, there was no obligation at that time for the FDIC-R to mail notice of the claim cutoff date to Westwind.[2]

Westwind became a creditor/claimant of Florida Community Bank/FDIC-R on March 17, 2010, when it filed its Counterclaim, Cross-Claims and Third Party Complaint (Doc. #4) which included claims against Florida Community Bank. The FDIC-R characterizes these as pre-receivership claims (Doc. #21, p. 4), although the Eleventh Circuit would characterize them as post-receivership claims. Stamm v. Paul, 121 F.3d 635, 639 (11th Cir. 1997)(post-receivership claim includes "claims related to conduct by the failed financial institution that the aggrieved party neglects to assert until after the [FDIC] assumes control over the lending entity. . . .") In any event, it is clear that the claims accrued prior to the receivership but were asserted after the receivership was established, and that Westwind did not file an administrative claim with the FDIC as to the claims in the Counterclaim, Cross-Claims and Third Party Complaint.

---

[2]The record does not reflect the cutoff date for filing administrative claims which was published by the FDIC-R. Westwind asserts that it was May 5, 2010 (Doc. #39, pp. 3-4), which for the purposes of the motion the Court assumes is correct.

Within thirty days of "discovery of the name and address of a claimant not appearing on the institution's books" the FDIC-R is required to mail a notice to the claimant that claims must be presented by a specified date. 12 U.S.C. § 1821(d)(3)(C)(ii). It is certainly arguable that the FDIC-R is deemed to have "discovered" Westwind was a claimant within the meaning of § 1821(d)(3)(C)(ii) when Florida Community Bank was served with process for the Counterclaim, Cross-Claims and Third Party Complaint on April 8, 2010. While not proper service of process on FDIC-R, the FDIC-R was running the bank at the time and the process was given to its Vice-President. It is undisputed that no notice was provided by FDIC-R.

The FDIC-R asserts that Westwind was aware that the FDIC had been appointed receiver over Florida Community Bank as of July 6, 2010, when it "filed its Amended Counterclaim and Cross-Claim attempting to name FDIC-R as a counter-defendant in the case, . . .", and that it "should have filed an administrative claim at that time". (Doc. #21, p. 5.) But nothing in the Amended Counterclaim and Cross-Claim, filed on July 9, 2010, attempted to name the FDIC-R as a counter-defendant, or made any reference to the FDIC-R. (<u>See</u> Doc. #97.) It is a reasonable inference from the records before the Court that the first time Westwind knew of the

receivership was on September 17, 2010, when FDIC-R filed its motion to dismiss,[3] which was later withdrawn.

Shortly before September 17, 2010, is also the outside date when the FDIC-R is deemed to have discovered the name and address of Westwind as a claimant. FDIC-R obviously knew about Westwind's claim when it filed its motion to dismiss the Counterclaim, Cross-Claims and Third Party Complaint. From at least this date, FDIC-R knew Westwind was a creditor and claimant. Damiano, 104 F.3d at 331 n.3. There is no suggestion that FDIC-R ever mailed the required notice.

Thus, the record evidence suggests that FDIC-R discovered Westwind as a claimant prior to the May 5, 2010 cutoff date, and certainly no later than September 17, 2010. There is no record evidence that the FDIC-R ever complied with its statutory obligation to provide written notice of a claim cutoff date to Westwind. While the FDIC-R sees this as merely being somewhat problematic (Doc. #21, pp. 5-6), this seems to be too cavalier since the lack of a mailed notice raises due process concerns which are unresolved in the Eleventh Circuit. Damiano, 104 F.3d at 335 n.13; LaCentra Trucking, 157 F.3d at 1299 n.5. The Eleventh

---

[3]Section 1821(d)(5)(C)(ii) gives the FDIC discretion to hear claims filed after the filing deadline if the claimant did not have notice of the identity of the receiver before the deadline. "The discretion conferred by § 1821(d)(5)(C)(ii) is narrowly drawn, and the FDIC loses this discretion after the claimant has notice of its status as receiver." Paul v. FDIC, 91 F.3d 110, 112 (11th Cir. 1996).

Circuit has noted that at least one court has suggested that such lack of notice may delay the start of the time period for filing claims until after the receiver has properly complied with the notice requirements. Damiano, 104 F.3d at 335 n.13 (citing FDIC v. Updike Bros., Inc., 814 F. Supp. 1035, 1041 (D. Wyo. 1993)).

The lack of written notice from FDIC-R, coupled with the FDIC-R's participation in the judicial proceedings, establishes that the FDIC-R has elected to proceed in a judicial forum and not administratively.  The FDIC-R's first response to the state court claims against Florida Community Bank was to file a motion to dismiss unrelated to its status as receiver.  (See Doc. #9.)  This motion was withdrawn seven months later, and a motion to dismiss based upon the failure to name the FDIC-R as the proper party was filed.  This second motion was granted.  On April 25, 2011, the Second Amended Counterclaim and Cross-Claim (Doc. #5) was filed naming FDIC-R as a counter-defendant, and on April 27, 2011, FDIC-R accepted service of process.  Thus, the post-receivership claims against Florida Community Bank were added to a pre-receivership lawsuit, and FDIC-R was named as the party defendant, as the FDIC-R had argued was proper in its motion to dismiss.

The FDIC-R always had the authority to request a stay "in any judicial action or proceedings to which such institution is or becomes a party" for a period not to exceed 90 days.  12 U.S.C. § 1821(d)(12)(A)(ii).  FDIC-R never did so.  Rather than seek a stay

to allow administrative remedies to be exhausted, it filed two motions to dismiss, withdrawing one and prevailing on the second. The FDIC-R then removed the case to federal court after the appropriate amended pleading was filed, and now seeks dismissal for lack of subject matter jurisdiction. The Court concludes that the FDIC-R, by its conduct in this case, has elected to proceed judicially, and Westwind was not required to file an administrative claim. E.g., Damiano, 104 F.3d at 335 n.12. LaCentra Trucking, 157 F.3d 1305 n.10.

On the record before it, the Court cannot find that there has been an unexcused failure to exhaust administrative remedies which results in a lack of subject matter jurisdiction. This portion of the motion to dismiss will be denied.

### III.

Alternatively, the FDIC-R seeks dismissal for failure to state a claim. The FDIC-R asserts that the claims are barred by 12 U.S.C. § 1283(e)(1), which provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1283(e)(1). The operative pleading does not seek to enforce an agreement, but is premised on enforcement of a lien filed in the public records and a claim of unjust enrichment. Because the claim is plausible on its face, and that is all that is required at this stage of the proceedings, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), this portion of the motion will be denied.

Accordingly, it is now

**ORDERED:**

Counterclaim Defendant Federal Deposit Insurance Corporation's Motion to Dismiss Second Amended Counterclaim and Cross-Claim of Counter-Plaintiff Westwind Contracting, Inc. (Doc. #21) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of October, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record